BRIGGS *v.* GAUTIER.

(In Banc.   Oct. 11, 1943.)

[15 So. (2d) 209.   No. 35498.]

Ben Stevens, of Hattiesburg, and O. F. Moss, of Luce-dale, for appellant.

474

White & Morse and Geo. R. Smith, all of Gulfport, for appellee.

476

**McGehee, J.**, delivered the opinion of the court.

This is an appeal from the decision of a special court or tribunal organized under Section 15, subsections (b) and (c) of Chapter 19, Laws Ex. Session 1935, known as the Corrupt Practices Act, and involves the question of whether the general primary election held on August 3, 1943, was a valid election insofar as the candidacies of the appellant and appellee for the Democratic nomination as a member of the board of supervisors from District Number 3 in Jackson County, Mississippi, are concerned, they being the only candidates for said office and the contest being limited to the South Pascagoula and Scranton voting precincts in such supervisor's district.

There were 179 votes cast for the appellant and 176 for the appellee at the three other remaining precincts, and the count of the ballots at the South Pascagoula box disclosed that 69 votes were cast for the appellant and 65 for the appellee, and that at the Scranton box 260 votes were cast for the appellant and 279 for the appellee, making a grand total of 508 votes received by the appellant and 520 by the appellee in said election.

The petition of the appellant, as contestant, in the court below, asked that the votes cast at the South Pascagoula and Scranton precincts be either thrown out and the contestant declared the nominee on the face of the returns at the other three voting precincts, or that another primary be held at the two precincts complained of for the following reasons: First, that at the Scranton voting

precinct none of the managers or clerks took the required oath before entering upon her duties as officers at such election, contrary to the provisions of Section 5874, Code of 1930. Second, for the reason that when the polls had been closed at the Scranton voting precinct the ballots were taken from the downstairs lobby of the county courthouse, at Pascagoula, where the election for such precinct had been held for many years according to a well established custom, to the second floor of the said courthouse to be opened and counted in the courtroom, when and where some of them were counted and called aloud by two of the managers and their assistants in full and plain view of the voting public, as provided for by Section 4, Chapter 19, of the Laws aforesaid, while the remaining ballots cast at such voting precinct, and which had been deposited in a second ballot box on account of the original box being of insufficient capacity to hold all of the votes cast at that precinct, were carried from the courtroom into the grand jury room by one of the managers, where they were counted and called aloud by him and some assistants selected from the audience, the counting in the grand jury room being done while the same proceeding was in progress in the main courtroom and during a part of which time the door to the grand jury room was closed. And, third, that at the South Pascagoula precinct none of the electors were required by the managers to sign their names on the receipt book or booklet provided for that purpose, as a condition precedent to their right to receive a ballot and cast a vote in such election, but that their names were signed in the receipt book or on such other record as was kept of the names by one of the election managers.

The finding of fact by the special court or tribunal, which was concurred in by the two election commissioners present and participating, and the bill of exceptions contained in the record, both disclose that the election at these two voting precincts, respectively, was held and the votes counted in the manner above complained of. It

was further shown, however, that the contestant and the contestee were present at the Scranton box when the ballots were being counted as aforesaid, and that they and their friends had access to the grand jury room, going in and out of the same freely and without any interference from anyone while the counting was going on both in said room and in the main courtroom, no objection having been made by them or anyone else to this procedure; also, that the closing of the door to the grand jury room for a part of the time while the ballots were being counted was at the suggestion of one of the election officials to prevent the noise occasioned by calling the ballots aloud in the grand jury room from interrupting the proper counting and calling of those in the main courtroom, and vice versa. It was further adjudicated by the special tribunal, however, that neither the contestant nor contestee was a party to the irregularities complained of or exercised any control whatsoever over the manner in which the votes were counted. In other words, the record does not show that the plan adopted was by agreement with, or at the suggestion of, either of the candidates, but merely that they submitted to the procedure without then making complaint or protest, if indeed a matter in which those voting in the election and the public generally are so vitally interested could be the subject of an agreement or waiver on the part of the candidates, a question on which we express no opinion, since no agreement is here invoked and we find that the facts adjudicated by the special tribunal are insufficient to clearly and satisfactorily establish an estoppel or waiver on the part of the contestant.

On the question of whether the failure of the election officials at the Scranton voting precinct to take the oath required by Section 5874, Code of 1930, before entering upon their duties as such, it was held in the case of Pradat v. Ramsey, 47 Miss. 24, that such a failure does not vitiate an election. In other words, the requirement is directory and should be observed, but it is not manda-

tory. Cf. Fullwood v. State, 67 Miss. 554, 7 So. 432, and Shines v. Hamilton, 87 Miss. 384, 39 So. 1008.

As to whether or not the counting and calling of the ballots for the Scranton voting precinct by two of the managers and their assistants in the main courtroom while the remaining ballots were being counted and called by the other manager and his assistants in the grand jury room had the effect of being a total departure from the requirements of Section 4 of the Act here under consideration, we find that said section of the Act provides, among other things, that "when the polls shall be closed the managers shall then publicly open the box and immediately proceed to count the ballots, at the same time reading aloud the names of the persons voted for, which shall be taken down and called by the clerks in the presence of the managers." That is to say, the managers, and not one manager, are required to count the ballots and also that whatever is done by the clerks is to be in the presence of the managers, and not in the presence of only one manager. Moreover, it is further required that "during the holding of the election and the counting of the ballots the whole proceedings shall be in fair and full view of the voting public . . . ." This evidently means that the voting public at the particular precinct is entitled to have a fair and full view of the counting and calling of the ballots as well as the holding of the election, which would be impossible if the ballots are divided for counting and some of them are being counted and called aloud at one place by one of the managers while the others are being counted and called aloud elsewhere by the other two managers. Then, too, the Act provides that the "candidates or their duly authorized representatives shall have the right to reasonably view and inspect the ballots as and when they are taken from the box and counted; . . . ." Neither could this right be availed of if the managers are permitted to divide the ballots and count at different places at one and the same time, unless the candidate is expected to anticipate such

a procedure and have a sufficient number of authorized representatives at each voting precinct to view what is being done by each of the three managers when the count is taking place.

As heretofore stated, two ballot boxes were used at the Scranton voting precinct, whereas the law required that the receipt book in which the names of the electors have been signed before receiving their ballots, as well as the tally sheets, certificates and other data, shall be placed in the ballot box, which is to be later opened and examined by the County Executive Committee, but no point is here made as to the inability of the managers to comply with the requirements as to placing the data in both boxes when two are used, or as to how the supplemental box could be later identified after it has been deposited in the office of the circuit clerk in the event more than one box should likewise be used at other voting precincts in the county, and we, therefore, express no opinion as to the effect of this irregularity.

On the objection to the validity of the election at the South Pascagoula precinct on the ground that none of the electors were required by the managers to sign their names on the receipt book or other record kept for that purpose, as a condition precedent to their right to receive a ballot and cast a vote in such election, there is but little, if anything, that could be added to what was said by the court in the case of Hayes et al. v. Abney et al., 186 Miss. 208, 188 So. 533, 537, in emphasizing that such failure rendered the election at such precinct absolutely void. Under the decision in that case the failure of those who hold the election to require the voter to sign his name in the receipt book or other record kept for the purpose before receiving a ballot to cast in the election was held to be fatal because the voter "is not entitled to a ballot nor to vote a ballot until this section (Section 4, Chapter 19, Laws Ex. Session 1935) has been complied with"; and the court there expressly held that "this feature is mandatory in order to accomplish the purposes

of the statute, and if totally departed from, as in the case at bar, the election will be held to be void.'' However, much emphasis is sought to be placed on the fact in the case at bar that the special tribunal has found that no qualified elector was denied the right to vote at the precinct in question. The election, however, is not challenged on that ground, nor was this provision of the statute enacted to prevent qualified electors from being deprived of the right to vote, but rather for the purpose of precluding any possibility of any qualified electors being counted as having voted who were not present at the voting precinct on election day. When there has been a total departure from this mandatory provision of the statute, it will not suffice to say that the contestant has failed to show that the will of the electors was not ascertained or has not shown the existence of fraud in connection with the failure to have the electors sign their names as required, when the failure complained of deprives him of the very means by which the fraud could be detected if any should exist.

But in justice to the contestee and to the election officials it should be said that there is no fact or circumstance in the case at bar that would indicate any wrongful or fraudulent purpose either in the manner in which the votes were counted at the Scranton precinct or in conducting the election at South Pascagoula. The questions before us to be decided merely involve the validity or invalidity of the election at the two precincts in question in view of the total departure from the requirements of the statute here under consideration in the particulars hereinbefore mentioned.

But it is urged that the challenge should not be sustained as to the South Pascagoula box for the reason that there were 69 ballots counted for the contestant at such box and only 65 for the contestee and that therefore it would not affect the result of the election if the voting at such precinct should be held to have been illegal. It is true that in the case of Hickman v. Switzer, 186 Miss.

720, 191 So. 486, 487, the court in construing Section 15 of the said Chapter 19, Laws Ex. Session 1935, requiring that the petition of a contestant shall set forth with particularity wherein the Excutive Committee has wrongfully denied the relief prayed for, said: "In order for it to appear that the executive committee has wrongfully denied the relief sought, it must appear either from the petition or exhibits thereto that if the matters complained of should be decided in the complainant's favor, the result would be that he and not the contestee would be the nominee for the office in question. Without an allegation to that effect, the petition presents no cause of action." This does not mean, however, that the contestant must be able to allege and prove as a condition precedent to a successful challenge of any particular box that a decision in his favor as to that box alone would change the result of the election complained of, but he may show that the result of the election would be changed by having his challenge sustained to a particular box along with other offending boxes if the combined effect would be to change the result of the election. Moreover, this is not an instance where there is merely a challenge of some of the ballots at a particular precinct or where a box is challenged because of irregularities, but a case where no election has been held at such precinct within the contemplation of the statute, the pretended election being absolutely void under the decision in Hayes et al. v. Abney et al., supra. In further response to this contention, that because the contestant was credited with a majority of four votes at the South Pascagoula precinct and cannot therefore complain, we deem it sufficient to say that cases may frequently arise where the question of whether the contestant received a majority of the votes at the precinct in controversy on the count made and returned would not be controlling, and where the important question would be whether or not he received the percentage of votes to which he was entitled, or to express it differently, whether the contestee was credited with more votes

than there were electors appearing at the voting precinct and voting for him, even though the contestee received a minority there.

The election at the South Pascagoula precinct and the counting and calling of the ballots at the Scranton precinct having been illegally conducted, and constituting a total departure from the plain requirements of the Corrupt Practices Act in the particulars complained of, we are of the opinion that another primary should be held at said precincts as provided for by Section 5, Chapter 19, Laws of Ex. Session 1935; that the contestant is not entitled to be declared the nominee on the face of the returns from the other three precincts in said supervisor's district for the reason that the failure to comply with the requirements of the statute was not for the purpose of electing or defeating a particular candidate by manipulating the election or the returns thereof at either of said boxes in such manner as to have them thrown out, and for the further reason that it appears to be lawfully just that another primary should be held at each of said two precincts. Harris v. Stewart, 187 Miss. 489, 193 So. 339. In this situation, it was the duty of the County Executive Committee, or the special court or tribunal on review, to have ordered another primary election to be held at the two precincts in controversy within five days from and after the date of the order in that behalf, appointing new managers to hold the same.

And since the statute here involved expressly requires that the Supreme Court shall render such judgment on appeal as the court appealed from should have entered, it is therefore ordered that another primary election be so held on Saturday, October 16, 1943, in the manner required by law, and that new managers at each of said two precincts be appointed to hold the same, who are to be named in the judgment entered pursuant to this opinion and decision of the court herein.

Reversed and another primary election ordered to be held accordingly.