## ALLEN *v.* FUNCHESS.

(In Banc. Oct. 25, 1943. Suggestion of Error Overruled Nov. 22, 1943.)

[15 So. (2d) 343. No. 35505.]

McNeil, Jones & Zama, of Hazlehurst, for appellant.

Henley, Jones & Woodliff, of Hazlehurst, and Watkins & Eager, of Jackson, for appellee.

**Griffith, J.,** delivered the opinion of the court.

This is an appeal from the unanimous judgment of a Special Tribunal of a trial judge, and the three election commissioners of the county, in a primary election contest over the nomination of the office of chancery clerk of Copiah County, the election in question being the second primary held on August 24, 1943. The official returns showed a total vote in the 24 precincts of the county of 1811 votes for appellee and 1788 for appellant. In accordance with Section 7 of the Corrupt Practices Act, Chapter 19, Laws 1935, Ex. Sess., appellant obtained an examination of all the 24 boxes, which examination was conducted, after due notice, on August 31, 1943, and disclosed that for 22 of the precinct boxes the official count corresponded with the recount but that at the East Hazlehurst box there was a difference between the official count, and the count made on the said examination of 13 votes in favor of appellant and a like number against appellee, and at the West Hazlehurst box there was the same difference of 13 votes in favor of appellant and against appellee—a situation which, under the ordinary law of chances, could not have arisen at two separate precincts in one case in a thousand except as a result of some subsequent and intermediate design.

The count made on the said examination would, if recognized, convert the majority of 23 votes for appellee, as

shown by the official returns, into a majority of 29 for appellant. The executive committee, on being reassembled, declined to act on the said examination and recount and adhered to its original determination that appellee was the nominee, whereupon appellant took, in due course and order, the steps necessary to have the matter submitted to a judicial review, which review having been had, a judgment as stated was rendered by the Special Tribunal in favor of the contestee, hence this appeal as first above stated.

No attack was made in appellant's petition before the executive committee, and to which his petition for a judicial review was confined, on any of the boxes except the East Hazlehurst and the West Hazlehurst boxes, and as to these no illegal voting or illegal receipt of votes was alleged, but the attack was confined to the manner in which the official counts were made immediately after the polls were closed. The answer of appellee was by way of defense as to the integrity of the official count at these two boxes, with the further averment that when the boxes, including the two attacked, were delivered to the circuit clerk, immediately after the executive committee had made its examination of the boxes on Thursday, August 26, 1943, the circuit clerk had failed to reseal the boxes and to keep a record of the seals as required by Secs. 6 and 7 of the said Corrupt Practices Act, and that therefore the boxes and their contents thereupon had lost their integrity in point of having any evidentiary value at the time the examination and recount was made on August 31st, and appellee went further and alleged that not only was an opportunity to tamper with the ballots in the two challenged boxes afforded by this failure to reseal them, but that as a matter of fact the contents of the two boxes had actually been tampered with and in the manner to produce the discrepancy between the official returns and the ballots as found in the two boxes on the subsequent examination and recount,—although appellee has completely exonerated appellant, as does the

entire record as it stands before us, of any part in what happened to these boxes or that he would by word, deed or knowledge have taken any part therein. Had these boxes been sealed, as required by the statute, it is entirely probable that this unfortunate controversy would never have proceeded to the course of an expensive litigation with its residue of doubts which will inevitably linger and rankle.

What has been said has been by way of disclosing in outline what were the issues which confronted the special tribunal. The record and the briefs in the case have been presented to us during the first part of the week next before a decision must be announced on this Monday in order that the nominee may get on the official ballot for the general election on November 2d. Under our usual course of procedure in all cases, the record and briefs must be examined by not less than two judges, and on the case not less than two conferences of all the judges must be had in the detailed consideration of everything presented; wherefore, we are without the time to prepare an opinion in that detail which the case would otherwise receive, and we must of necessity resort in a large degree to outlines and summaries.

Subsection (c), Sec. 15 of the Corrupt Practices Act provides that "the special tribunal . . . shall fully hear the contest or complaint de novo and make a finding dictated to the reporter covering all controverted material issues of fact, . . . and thereupon the trial judge shall enter the judgment which the county executive committee should have entered," etc. The Special Tribunal did not "make a finding dictated to the reporter covering all controverted material issues of fact," but instead, the tribunal, as such, made no finding save as embodied in its final order which is as follows:

"The Special Tribunal, selected to hear and decide this case, now having considered all of the testimony, together with the documentary evidence, have reached a unanimous decision herein,

"And it is now ordered and considered by the court that the evidence in this case does not justify this court in overturning the decision of the legally constituted authorities who have acted heretofore, to-wit, the officers holding the election and the Democratic Executive Committee.

"It is therefore ordered by the court that H. T. Funchess be and he is declared the nominee of the Democratic party for office of chancery clerk of Copiah County, Mississippi. Four additional days are allowed for appeal and Bill of Exceptions."

The record shows that neither party requested the Special Tribunal to make the findings in the manner as pointed out by the statute. Nevertheless, the record itself raises the question whether there is anything before us on the record as it now stands upon which we are authorized to act, a full transcript of the evidence not being here, and therefore whether we should not dismiss the appeal or affirm for that reason alone. However, appellee has not raised the point, or if so he has not insisted upon it, but has proceeded to the argument as if there were implicit in the order made by the Special Tribunal the decision of the two ultimate issues: That (1) under all the evidence the contents of the boxes on August 31st had lost their integrity as having a safe and dependable evidentiary value; and that (2) the evidence as a whole is sufficient to sustain the official counts as made immediately after the close of the polls.

In the view, but to which we do not commit ourselves as a precedent, that the order of the Special Tribunal does carry the said findings as its ultimate conclusion upon the facts, then inasmuch as the order was unanimously entered, we are at once further confronted with the provision of Subsection (d) of Sec. 15 of the Corrupt Practices Act which provides that "if the findings of fact have been concurred in by all the commissioners in attendance, provided as many as two of the commissioners are and have been in attendance, the facts shall not be

subject to review on appeal, and the bill of exceptions shall not set up the evidence upon which the facts have been determined." In such a case, the only recourse by an appellant would be to show that there was either (1) no evidence whatever to sustain the findings, or (2) what would amount to the same thing, that there was no substantial evidence in support of the findings.

This sends us then to the synopsis of the facts as set up in the bill of exceptions, and from this we cannot fail to see that there was introduced substantial evidence, competent and believable, in support of the findings by the Special Tribunal on the two controlling issues as stated, from which an affirmance must follow, whatever we might think of this evidence if we were permitted under the statute to make an independent finding. For reasons already stated, we are without the time or opportunity to elaborate upon the facts as disclosed by the synopsis, nor upon the several considerations which have led to the conclusion which we have herein stated; but we do add that as to East Hazlehurst box, the facts do not bring the case within Briggs v. Gautier, 195 Miss. 472, 15 So. (2d) 209, recently decided here, and as to the West Hazlehurst box, we would call attention to the holdings in such cases as State v. Creston, etc., Co., 195 Iowa, 1368, 191 N. W. 988; Roberts v. Calvert, 98 N. C. 580, 4 S. E. 127; and Fullerton v. Smizer, 51 S. D. 320, 213 N. W. 730, cited on page 327 of 29 C. J. S., Elections, sec. 225, which cases we find upon an examination fully sustain the text.

We are satisfied with what was said and done by us in Briggs v. Gautier, as applied to the wide and vital departure from the statutory course there shown, but if we should advance that holding so as to embrace cases such as presented under all the facts in the instance now before us, primary election contests, especially as to the larger precincts, would become so common as to overbear the good that was sought to be accomplished in allowing them.

Affirmed.

**McGehee, J.**, delivered a dissenting opinion.

As stated in the majority opinion herein, the returns of the election, as reported by the election managers throughout the county, disclosed that the appellee, Funchess, had received a majority of 23 votes as the Democratic nominee for the office of chancery clerk; and that on a recount of all the ballots, in accordance with Section 7 of the Corrupt Practices Act, Chapter 19, Laws of 1935, Ex. Session, the appellant Allen was shown to have received a majority of 29 votes.

In determining which of these two counts should prevail, or whether another primary election should be held at the two precincts in question, it is necessary to consider the question of what weight should be attached to the presumption of law in favor of the correctness of the returns made by the election managers. The presumption thus invoked by the appellee is based upon the theory that the election managers have counted the ballots, and have certified the result of their own personal knowledge. Section 4 of the Act here under consideration expressly provides that "when the polls shall be closed the managers shall then publicly open the box and immediately proceed to count the ballots, at the same time reading aloud the names of the persons voted for, which shall be taken down and called by for the clerks in the presence of the managers. . . . And candidates or their duly authorized representatives shall have the right to reasonably view and inspect the ballots as and when they are taken from the box and counted."

In the case of Briggs v. Gautier, 195 Miss. 472, 15 So. (2d) 209, 211, decided by the court in banc October 11, 1943, the court quoted and construed the foregoing requirement of the Corrupt Practices Act in regard to the manner in which the counting of ballots were conducted at the Scranton precinct in Jackson County, and said: "As to whether or not the counting and calling of the ballots for the Scranton voting pre-

cinct by two of the managers and their assistants in the main courtroom while the remaining ballots were being counted and called by the other manager and his assistants in the grand jury room had the effect of being a total departure from the requirements of Section 4 of the Act here under consideration, we find that said section of the Act provides, among other things, that 'when the polls shall be closed the managers shall then publicly open the box and immediately proceed to count the ballots, at the same time reading aloud the names of the persons voted for, which shall be taken down and called by the clerks in the presence of the managers.' That is to say, the managers, and not one manager, are required to count the ballots and also that whatever is done by the clerks is to be in the presence of the managers, and not in the presence of only one manager. Moreover, it is further required that 'during the holding of the election and the counting of the ballots the whole proceedings shall be in fair and full view of the voting public . . . .' This evidently means that the voting public at the particular precinct is entitled to have a fair and full view of the counting and calling of the ballots as well as the holding of the election, which would be impossible if the ballots are divided for counting and some of them are being counted and called aloud at one place by one of the managers while the others are being counted and called aloud elsewhere by the other two managers. Then, too, the Act provides that the 'candidates or their duly authorized representatives shall have the right to reasonably view and inspect the ballots as and when they are taken from the box and counted; . . . .' Neither could this right be availed of if the managers are permitted to divide the ballots and count at different places at one and the same time, unless the candidate is expected to anticipate such a procedure and have a sufficient number of authorized representatives at each voting precinct to view what is being done by each of the three managers when the count is taking place.''

While it is to be conceded that the departure from this requirement of the statute was more pronounced and glaring in the Briggs case than was the manner of counting the ballots at the two voting precincts here involved, I am of the opinion that our construction as to the force and effect of this legal requirement is applicable in principle to the situation now presented in this case, since the record here discloses that after the polls were closed at one of the precincts in question, the ballots were divided so that a portion of them were counted at one table and the remainder at another table, approximately twelve or fifteen feet from each other, and that the calling aloud of the ballots as they were being counted was in progress at the same time, although the two counts were being conducted in the same room. Amid such confusion as necessarily existed, the probability is that the tallying official at one table would mistake the call being made at the other table as being one which he should record. Moreover, the election manager at one of the tables could not keep up with what was going on at the other with that degree of certainty which would enable him to certify the result of the entire count as of his own knowledge. The testimony of those engaged in the work at the respective tables, as to their calling and counting being correct, is not controlling as to whether there was such a departure from the requirements of the statute as to render the count illegal within the meaning of the law, as declared in the case of Briggs v. Gautier, supra, since the proof in that case likewise disclosed that the counting was correctly done. It also appears that the counting at the other precinct in question did not comply with the holding in the Briggs case. This being true, the presumption in favor of the correctness of the returns of the election managers would not prevail.

As to whether or not the recount which disclosed the result to be a majority of 29 votes in favor of the appellant, Allen, should prevail, it would be necessary in any event, whether we assume that the ballots had been

legally counted by the managers or not, that when the recount was taken the ballots were in the same condition, as to showing for whom they were cast, as when originally placed in the ballot box at the voting precinct. The presumption should be that they were in the same condition, in that regard, for the reason that to assume otherwise is to presume fraud and the commission of the crime of burglary and forgery, it being contended by appellee that the theory on which the judgment rendered by the special court should be sustained is that the substitution of new ballots for some of those originally placed in the box was accomplished in the nighttime by breaking into the office of the circuit clerk where the ballot boxes were then located and unsealed. If, however, the said presumption has been overcome by substantial evidence to the effect that the ballot boxes had been tampered with, and the substitution made in the manner complained of, then, of course, their integrity had been destroyed, and the contents of the two ballot boxes in question had lost their value as evidence. Consequently, the recount would have afforded no safe criterion by which to ascertain the will of a majority of the electors at such precincts. I would not feel justified in saying that there was no substantial evidence to sustain the decision of the Special Tribunal which heard the testimony and considered the documentary evidence offered in holding that the integrity of the ballots had been destroyed and their value lost as to the correctness of such recount, as a means of ascertaining the true will of the majority of the electors; although I am of the opinion that other than the fact that the boxes were unsealed, the evidence is unsatisfactory in that behalf in many respects.

For example, the testimony of the handwriting expert was to the effect that the initials of one of the managers had been simulated on the alleged spurious ballots to such an extent that the initialing manager at these two precincts were willing to testify positively as witnesses at the hearing that such initialing was in their own hand-

writing, as against the contention of the expert that those ballots in particular had all been voted by one and the same person; and if it be conceded that the signature of the initialing manager was, in reality, simulated, such fact is explained by the testimony of one of the lady managers that she relieved temporarily the lady whose initials appeared on the other ballots, and admitted having endeavored to simulate the signature of the latter with her consent, and which fact would by no means prove that several of the ballots initialed by her were marked with an "X" by one and the same person.

Again, it is probable that only a locksmith could have opened the steel doors to the clerk's office; and it would have been necessary that either he or an accomplice should have possessed expert skill as a forger to thus simulate the initialing by the manager, and also that they should have been unmindful of, or indifferent to, the danger of being apprehended while spending sufficient time in the clerk's office, at night, to have forged 26 ballots for substitution, using some of the left-over blank ballots then and there found in the ballot boxes.

But, assuming that I am in error in this conclusion, and that the proof is sufficient to justify the decision of the Special Tribunal, to the effect that the ballots had been tampered with in such manner, it would necessarily follow that if the counting of the contents of these two boxes on the evening of the election was illegal, for reasons hereinbefore stated, the result would be that another primary should be held at these two voting precincts, in order that a legal count may be made, and the true will of the electorate ascertained, since the substitution of the forged ballots has precluded a correct count by the Executive Committee, or the Special Tribunal that heard the contest.

In my opinion, we are not precluded from a consideration of the facts set forth in the bill of exceptions signed by the judge who presided over the Special Tribunal, or any other facts disclosed by the evidence in the records, for the reason that, as shown by the order contained in

the majority opinion herein, the Special Tribunal did not make a finding of fact in the case. The order entered makes no reference to any particular factual issue but merely states the conclusion of the Special Tribunal to the effect that "The evidence in this case does not justify this Court in overturning the decision of the legally constituted authorities who have acted heretofore, to-wit: the officers holding the election and the Democratic Executive Committee." And when we look to the same evidence which must be supplied in the order of the Special Tribunal to make it a finding of fact, we find that one of the issues to be determined by this court therefrom is the legality of the counting at the precincts here involved. I think that when this is done, it follows that under the construction given the statute in the Briggs case, an illegal count is equivalent to no count at all.

Section 5, Chapter 19, Laws Ex. Session 1935, provides that where it is found that there have been failures in material particulars to comply with the requirements of the Act and to such an extent that it is impossible to arrive at the will of the voters at the precinct in question, the entire box may be thrown out under certain conditions not controlling in this case, or the executive committee, or the court upon review, may order another primary election to be held at that box.

I am therefore of the opinion that the cause should be reversed and that another primary election should be held at the two precincts in controversy to the end that the will of a majority of the electors may not be left in doubt.

**Smith, C. J.**, concurs in this opinion.