ULMER *v.* CURRIE

No. 42604 December 10, 1962 147 So. 2d 286

*William Joel Blass,* Wiggins, for appellant.

*W. W. Pierce, Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellee.

ETHRIDGE, J.

This is an election contest under the Corrupt Practices Act of 1935. Miss. Code 1942, Rec., Secs. 3158-3195. It involves the Democratic primary election, held on June 5, 1962, for Circuit Judge of the Thirteenth Circuit Court District. The district is composed of four counties, Smith, Simpson, Covington and Jasper. The two candidates were Honorable Homer Currie of Raleigh, in Smith County, and incumbent circuit judge, and Honorable J. E. Ulmer, of Bay Springs, in Jasper County.

According to the original canvass by the State Democratic Executive Committee, there were 8,720 votes cast in the election. Currie received 4,453, and Ulmer 4,267 votes, thus giving Currie a majority of 186 votes on the original canvass. Subsequently Ulmer made a timely request for examination of ballot boxes, with counter-

requests by Currie. In July Ulmer filed with the State Democratic Executive Committee a petition contesting the election. Currie answered and cross-petitioned, contesting ballots in certain boxes.

The County Democratic Executive Committees of three counties, Smith, Simpson and Covington, held separate hearings, found there was no fraud, and declined to make any substantial changes in their original returns. The Democratic Executive Committee of Jasper County reported that there were no valid ballots cast in any precinct except one, with forty votes, because of failure to comply with mandatory provisions of the statute, and recommended a new primary be called in that county.

■■ ■ There are ninety precincts in the Thirteenth Circuit Court District. On September 8, 1962, the State Democratic Executive Committee considered the contest. It found that, because of failure to comply with several mandatory provisions of the Corrupt Practices Act, the elections held in forty-eight of the ninety precincts of the district were without effect and void. There was no showing of fraud, but failure to comply with the statute "in more than half of the precincts in the district make it impossible for this committee to say that the remaining vote constitutes a true expression of the public will and a new election should be called and properly held in the forty-eight void precincts. . . ." It was directed to be conducted on September 13, 1962, although it was not held but was superseded, after Currie took an appeal to the Circuit Court of Hinds County, from the order of the State Committee.

On October 20, 1962, the Circuit Court reversed the order of the State Committee, dismissed Ulmer's contest of the election, and declared Currie the Democratic nominee. Judge Currie's name therefore was on the ballot as the Democratic nominee in the general election in November 1962, and as the Democratic nominee, was elected.

The circuit judge not only held that forty-four boxes were invalid for various infractions of the required provisions of the law (as both sides agreed), but also ruled that ten other boxes were invalid. In other words, out of a total of ninety precincts, all of the votes in fifty-four of them were void because of failures to comply with the statutes. Only thirty-six boxes contained valid ballots. Currie does not cross-appeal from these findings of the circuit court.

Nevertheless, the circuit court reversed the State Democratic Executive Committee and declared Currie the nominee. It held that, after all of the ballots in fifty-four of the ninety boxes were declared void, a count in the remaining thirty-six boxes reflected that Currie received a majority of 259 votes; and "regardless of the large number of illegal votes", there were not enough of them to change the election or to cast doubt on it.

The ballots cast in the remaining thirty-six, valid boxes aggregated 3,707 votes. The total vote in the entire district was 8,720. Assuming all of the votes cast in the thirty-six valid boxes to be good, there were only 3,707 valid ballots, as against 5,013 which were invalid. In other words, only 3,707 out of a total of 8,720 votes were valid . Five thousand and thirteen were void. Hence approximately 57.5 per cent of the total vote in the election was void, because of failure of election officers in the precincts in question (fifty-four out of ninety), to comply with the mandatory provisions of the Corrupt Practices Act. Conversely, only 42.5 per cent of the total votes in the Democratic primary of June 5, 1962, for circuit judge, could be counted. The remainder were void.

 ██ In the fifty-four invalid boxes, material departues from the Corrupt Practices Act occurred in various ways: Ballots were not initialed by the initialing officer. The initialing officer and the receiving officer or custodian were one and the same person.

Voters did not sign a receipt book for their ballots. Code Sec. 3164. These provisions are mandatory.

This is a plain case for application of the rule summarized in May v. Layton, 213 Miss. 129, 56 So. 2d 89 (1952). That involved a primary election for the board of supervisors. The Special Tribunal held void 836 votes out of a total vote in the district of 2,213. There was no finding of fraud but the judgment was based upon the failure of election managers to initial the regular ballots, of regular voters to sign receipt books therefor, and upon defects in the method of delivery of absentee ballots. Thirty three per cent of the total vote was declared invalid. It was there said:

"Hence the result of excluding such a large proportion of the total votes cast in the district is to make it impossible for one to reasonably say that the result arrived at by the Special Tribunal represented the will of the voters, because the votes of more than one-third of the voters of that district were held void for failure to comply with mandatory provisions of the statutes . . . .

". . . it is manifest that these above-stated failures to comply with the mandatory provisions of the statutes require that practically all of the votes in all four of the boxes in question must be held void.

"As was said in Briggs v. Gautier, 1943, 195 Miss. 472, 485, 15 So. 2d 209, where there is a total departure from the mandatory provisions of the statute, and it is not possible to ascertain the will of the electors, because a substantial portion of the votes were void, a new election should be ordered for the purpose of ascertaining the voter's choice. See also Chinn v. Cousins, 1946, 201 Miss. 1, 27 So. 2d 882; Code Sec. 3167."

In Walker v. Smith, 213 Miss. 255, 56 So. 2d 84 (1951), also a contest for the board of supervisors, the main issues centered around absentee voter ballots. It was said the burden of proof was on the contestant to show that the illegal, absentee voter ballots would have chang-

ed the result, and he did not do that. Hence the contestee
was declared the nominee. On suggestion of error, con-
testant asserted that under Hayes v. Abney, 186 Miss.
208, 188 So. 533 (1939), he did not have this burden,
but needed to show only that there were enough illegal
votes to change the result or leave it in doubt. This
contention was rejected on the facts. This rule was
contrasted with a supplementary, additional doctrine.
We think the latter is applicable to the instant case:

"A competing principle, set out in Code of 1942,
Sec. 3167, is that where there has been such a substantial
failure to comply in material particulars with the re-
quirements of the Corrupt Practices Act that 'it is
impossible to arrive at the will of the voters', the entire
box may be thrown out or the court may order another
election to be held. For example, in Hayes v. Abney,
supra, the court found that there was a total departure
from the statutory requirements by failure of the man-
agers to have voters sign receipts for their ballots, and
declared the primary election void. To the same effect
are Briggs v. Gautier, 1943, 195 Miss. 472, 15 So. 2d
209; May v. Layton, Miss., 56 So. 2d 89.

"What constitutes such a substantial failure to com-
ply in material particulars with the requirements of
the statutes in a primary election, which would fall
within the foregoing classification so as to require the
throwing out of a box or calling a new election, depends
upon the facts and circumstances in each particular
case, including the nature of the procedural require-
ments violated, the scope of the violations, and the ratio
of illegal votes to the total votes cast. For example, in
May v. Layton, supra, 836 votes out of a total of 2213
were held to be illegal, and it was said that this result,
by holding void more than one-third of the total votes
cast, made it impossible to determine the will of the
voters and constituted such a substantial failure to com-
ply with the statutes as to require a new election. . . .

"In the present case, there were eighty illegal votes, and a total vote of 1229, the illegal votes being only 6.5 per cent of the total votes cast. We do not think that the present facts would warrant the court in saying that there is such a substantial failure to comply in material particulars with the statutes as to invalidate the election, as occurred in May v. Layton, supra, and only under such a state of facts is the contestant's burden of proof reduced from a showing that the contestee's illegal votes if eliminated would change the result, to proving only that enough illegal votes were cast . . ." to make it impossible to ascertain the will of the voters. Code Sec. 3167. The latter rule is applicable in the instant case.

Hayes v. Abney, 186 Miss. 208, 188 So. 533 (1939), first applied this doctrine of substantial departure from the Corrupt Practices Act. In that election there was a total and radical departure from the procedures outlined by the statute in a municipal primary for mayor. In most of the precincts voters did not sign receipts for their ballots. A total departure from the fundamental provisions of the act rendered the election void. It "was of no more legal effect than a mass meeting or a 'straw vote'." To the same effect are Chinn v. Cousins, 201 Miss. 1, 27 So. 2d 882 (1946), and Trahan v. Simmons, 191 Miss. 353, 2 So. 2d 575 (1941).

Briggs v. Gautier, 195 Miss. 472, 15 So. 2d 209 (1943), ordered another primary election. There had been a substantial failure to require electors to sign a voter's receipt book. It was said that, where there has been a total departure from the mandatory provisions of the statute, it is not sufficient to say that contestant has failed to show a different result, "when the failure complained of deprives him of the very means by which the fraud could be detected if any should exist." Sinclair v. Fortenberry, 213 Miss. 219, 232-233, 56 So. 2d 697 (1952), also followed *Hayes*. It held that, because of a

substantial departure from the statutes, "the will of the qualified electors cannot be ascertained", and a special election should be held in the entire supervisor's district.

■■ ■ Appellee contends that Ulmer failed to meet his assumed burden of proof of showing that a different result would be effected by excluding the invalid boxes. He argues that Code Sec. 3109 controls exclusively. It provides in part: "Any candidate who receives the highest popular vote cast for the office which he seeks in the first primary shall thereby become the nominee of his party for such office; provided also it be a majority of all the votes cast for that office."

Section 3109 originated in Miss. Code 1906, Sec. 3700. It is not a part of the Corrupt Practices Act of 1935. It must be read in *pari materia* with the latter statute, and consistently with the decisions under the Corrupt Practices Act. Otherwise, the 1935 Act would be emasculated.

Appellee's assertion, that it was incumbent upon contestant to prove that he received the greater number of legal votes in only thirty-six out of ninety boxes, where fifty-four boxes were invalid, is untenable, in view of the competing rule applied under the Corrupt Practices Act, first stated in *Hayes,* and later summarized in *May* and *Walker.* Here there has been such a substantial failure by the election officers to comply in material particulars with the mandatory requirements of the Corrupt Practices Act that it is impossible to arrive at the will of the voters.

In fifty-four out of the ninety boxes in the district, or 57.5 per cent of them, there was a total departure. Out of a total of 8720 votes, 5013 were void and could not be counted. This was not the fault of the voters, but of widespread failures of election officials to comply with the principal protections in the Corrupt Practices Act for fair and unimpeachable primary elections. The result is that, for the failures of election officers,

294

5013 voters were disfranchised (57.5 per cent). Appellee's argument would allow this election to be decided by only 3707 votes, or 42.5 per cent of the total of 8720 votes cast. This is not consistent with the Act or the decisions under it, or the objective of a full and fair expression of the electorate.

In summary, the judgment of the circuit court is reversed, and judgment is rendered here, adjudicating that the election of the contestee, Currie, as Circuit Judge for the Thirteenth Circuit Court District, is invalid and void, and it is vacated and annulled. It is further ordered that a special election shall be called and held, for all of the boxes in the entire judicial district, in the manner provided by Miss. Code 1942, Rec., Sec. 3187.

Reversed, judgment rendered here, and new election ordered.

*McGehee, C. J., and Lee, Kyle and Rodgers, JJ.,* concur.