322 So.2d 753 (1975)
David B. CLARK
v.
RANKIN COUNTY DEMOCRATIC EXECUTIVE COMMITTEE and Lonnie C. Johnson.
No. 49084.
Supreme Court of Mississippi.
November 17, 1975.
*754 J. Edward Rainer, Pearl, for appellant.
McLaurin & Nicols, Brandon, for appellees.
Presented En Banc.
*755 WALKER, Justice, for the Court:
This appeal is by David B. Clark, the unsuccessful candidate for representative, District 28-B-2 in Rankin County, Mississippi, from the judgment of a Special Tribunal, consisting of a Judge named by the Chief Justice of the Supreme Court and the Election Commission of Rankin County, as provided for by Mississippi Code Annotated sections 23-3-45 et seq. (1972), dismissing his petition and affirming the action of the Democratic Executive Committee declaring the contestee, Lonnie Johnson, to be the duly elected Democratic nominee for the office of representative, District 28-B-2, Rankin County, Mississippi.
In his petition to the Democratic Executive Committee, Clark charged numerous violations of the provisions of the Mississippi Corrupt Practices Law of 1935 [now Mississippi Code Annotated sections 23-3-1 through 23-3-71 (1972)], and alleged that it was impossible to arrive at the will of the voters, and that if certain boxes were thrown out he would be the Democratic nominee. The petitioner concluded with the prayer that he be named the nominee, or in the alternative that a new election be held in all or in the contested boxes.
This appeal focuses upon the results of the West Brandon precinct where Lonnie C. Johnson received 606 votes to David B. Clark's 313, and the North Brandon precinct where Johnson received 405 votes to Clark's 272. If the results of these precincts are thrown out, the outcome of the election would be changed and a new election required.
The bill of exceptions now before us and its contents, which were agreed to by the parties, states, in part, as follows:
1. That the Rankin County Democratic Executive Committee certified Lonnie C. Johnson to be the nominee for Representative, Post 28 B-2 over David B. Clark by a vote of 6,985 to 6,752. That this Court threw out 210 votes which were cast in erasible (sic) pencil at the East Brandon box, 155 of which were cast for Lonnie C. Johnson and 55 of which were cast for David B. Clark. That the Court threw out two ballots in the Springhill box both of which were cast for Lonnie C. Johnson. Thus, Lonnie C. Johnson now has 6,828 votes over David B. Clark's 6,697.

2. At the North Brandon precinct votes were counted in the Chancery Clerk's office while the election was being conducted in the Board of Supervisor's room separate from the Chancery Clerk's office.

3. That at the West Brandon Precinct votes were being counted in a room adjacent to a room where the election was being conducted, and the counting took place while the election was being conducted in the said adjacent room.

......
5. That the established custom has been in every election for the past sixteen years in the North Brandon precinct that the counting be done as was done in this instance. (Emphasis added).
The contestant Clark strenuously argues that the counting of ballots in a room separate from where the election was being conducted and while voting was still in progress, was such a radical departure from the fundamental provisions of the Corrupt Practices Law as to render the returns from the West Brandon precinct and the North Brandon precinct void. We agree with this contention.
It is readily apparent and implicit from a reading of paragraphs 2 and 3 of the bill of exceptions that there was a complete radical departure from several provisions of the Corrupt Practices Law which prescribes in detail the time for opening the ballot box, the manner of counting the ballots, as well as who shall be present.
*756 Mississippi Code Annotated section 23-3-13 (1972) provides in part:
And when the polls shall be closed, the managers shall then publicly open the box and immediately proceed to count the ballots, at the same time reading aloud the names of the persons voted for, which shall be taken down and called by the clerks in the presence of the managers. During the holding of the election and the counting of the ballots, the whole proceedings shall be in fair and full view of the voting public, without unnecessary interference, delay or encroachment upon the good order of the duties and proceedings of the managers and other officers of the election. And candidates or their duly authorized representatives shall have the right to reasonably view and inspect the ballots as and when they are taken from the box and counted, and to reasonably view and inspect the tally sheets, papers and other documents used in said election during the proceedings, but not including, of course, the secret ballots being voted and placed and held in the box.
The above statute was violated in the following particulars: (1) The ballot box was not only opened prior to the time prescribed for closing of the polls but was opened while the election was still in progress. Section 23-3-13 provides "... when the polls shall be closed, the managers shall then publicly open the box and immediately proceed to count the ballots, at the same time reading aloud the names of the persons voted for, which shall be taken down and called by the clerks in the presence of the managers." There is no provision in the law which permits a ballot box to be opened and for counting to begin while the election is still in progress. To do so is a total departure from a mandatory feature of the Corrupt Practices Law specifically designed to insure the secrecy of a voter's ballot and to guard against the opportunity for fraud in the counting of the ballots. If such procedure were permitted, there would be nothing to prevent opening the box immediately after the balloting begins and counting each ballot as it is cast. This would violate the fundamental principle of the right to cast a secret ballot. Moreover, the transfer of a portion of the ballots from the ballot box to an adjoining room for the purpose of counting would give rise to untold opportunities for persons so inclined to corrupt the election process at that box; (2) the holding of the election and the counting of the ballots were not in fair and full view of the voting public, because the election was being conducted in one room and the counting was simultaneously being done in a separate room; (3) a candidate could not oversee the counting of the ballots and observe the conduct of the election at the same time. If this practice were permitted (separating the ballots for counting while the election is in progress), there would be nothing to prevent the ballots from being counted simultaneously in several separate rooms making it virtually impossible for a candidate to have enough poll watchers to look after his interest; and (4) the ballots were separated thereby making it impossible for the managers to both watch the election process and be present at the counting of the ballots as the law requires.
In the case of Briggs v. Gautier, 195 Miss. 472, 15 So.2d 209 (1943), this Court stated:
That is to say, the managers, and not one manager, are required to count the ballots and also that whatever is done by the clerks is to be in the presence of the managers, and not in the presence of only one manager. (195 Miss. at 481, 15 So.2d at 211).
The Court went on to say:
Moreover, it is further required that during the holding of the election and the counting of the ballots the whole proceedings shall be in fair and full view of the voting public... .' *757 This evidently means that the voting public at the particular precinct is entitled to have a fair and full view of the counting and calling of the ballots as well as the holding of the election, which would be impossible if the ballots are divided for counting and some of them are being counted and called aloud at one place by one of the managers while the others are being counted and called elsewhere by the other two managers. (195 Miss. at 481, 15 So.2d at 211).
The manner in which the boxes at the West Brandon precinct and North Brandon precinct were counted cannot be condoned.
When, as in this case, there has been a total departure from the mandatory provisions of the Corrupt Practices Law with respect to the time, manner and conditions under which the ballots were counted, the contestee cannot successfully claim that the contestant has failed to show the will of the electors could not be ascertained or has not shown the existence of fraud in connection with such counting. The departure complained of deprives him of the very means by which the fraud could be detected if any exists. Briggs v. Gautier, supra.
We have held in a number of cases that where there has been a radical departure from the mandatory provisions of the Corrupt Practices Law the result of the particular precinct or precincts in question is void. Wallace v. Leggett, 248 Miss. 121, 158 So.2d 746 (1963); Ulmer v. Currie, 245 Miss. 285, 147 So.2d 286 (1962); May v. Layton, 213 Miss. 129, 56 So.2d 89 (1962); Briggs v. Gautier, supra; Harris v. Stewart, 187 Miss. 489, 193 So. 339 (1940); Hayes v. Abney, 186 Miss. 208, 188 So. 533 (1939).
We therefore hold that opening a ballot box and removing the ballots or a part of them to a separate room for the purpose of counting while the election is still in progress is such a radical departure from the fundamental principles of the Corrupt Practices Law with reference to when and in what manner the votes are to be counted, as to render the election void as to that particular precinct. The Corrupt Practices Law was designed to insure not only that ballots would be legally cast, but also that they would be fairly counted.
The appellee contends that Clark cannot complain of the vote counting procedure employed at the two precincts in question since it has been the established custom in every election for the past sixteen years that the counting be done as was done in this instance. That contention is without merit. When established custom is a radical departure from mandatory provisions of the Corrupt Practices Law, the law and not the custom must prevail. There is nothing in this record that would estop Clark from asserting the position he has taken.
It is not necessary for us to decide whether a new election should be called for these two boxes alone or for the entire representative district, since the case did not reach this Court in time to have a primary election to determine the party's nominee prior to the November general election. Under such circumstances, Mississippi Code Annotated section 23-3-55 (1972) mandates what shall be done. That section provides in part as follows:
When no final decision has been made in time as hereinabove specified [in this case for the general election], the name of the nominee declared by the party executive committee shall be printed on the official ballots as the party nominee, but the contest or complaint shall not thereby be dismissed but the cause shall nevertheless proceed to final judgment and if the said judgment be in favor of the contestant, the election of the contestee shall thereby be vacated and the governor, *758 or the lieutenant governor in case the governor be a party to the contest, shall call a special election for the office or offices involved, if the contestee has already entered upon the term he shall vacate the office upon the qualification of the person elected at said special election, and may be removed by quo warranto if he fail so to do.
This Court has had occasion to construe the above section a number of times. Sinclair v. Fortenberry, 213 Miss. 219, 56 So.2d 697 (1952) involved a primary election contest for the office of supervisor. The Special Tribunal ordered the calling of a special primary election in one of the four precincts in the district on November 14, 1951, which was after the date of the November general election. This Court reversed that judgment and ordered a special election commenting "... it was too late to hold a special primary election ... and a special election should have been ordered to be held in the entire district in the manner provided in Section 3187, Code of 1942 [now Mississippi Code Annotated section 23-3-55 (1972)]." (213 Miss. at 233, 56 So.2d at 702).
Smith v. Deere, 195 Miss. 502, 16 So.2d 33 (1943) held that if the general election has already taken place, Section 15, Subdivision (f) of the Corrupt Practices Act, Chapter 19, Mississippi General Law of 1935, Extraordinary Session [now section 23-3-55] requires the Governor to call a special election for the office involved. To the same effect is Blakeney v. Mayfield, 226 Miss. 53, 83 So.2d 748 (1955), suggestion of error overruled, 84 So.2d 427 (1956) and May v. Layton, 213 Miss. 129, 56 So.2d 89 (1952).
Also see Harris v. Stewart, 187 Miss. 489, 193 So. 339 (1940) and Briggs v. Gautier, 195 Miss. 472, 15 So.2d 209 (1943) which involved situations where it was possible to call another primary election before the November general election.
In justice to the contestee, Lonnie C. Johnson, and to the election officials, it should be said that there is no fact or circumstance in the case at bar that would indicate any wrongful or fraudulent purpose either in the manner in which the votes were counted or in the conduct of the election. The question before us merely involves the validity or invalidity of the election at the two precincts in question in view of the total departure from the requirements of the statute.
The judgment of the Special Tribunal is reversed and a special election shall be called in accordance with Mississippi Code Annotated section 23-3-55 (1972).
Reversed and special election to be called.
All Justices concur.