441 So.2d 1322 (1983)
Julian RILEY
v.
Jerry CLAYTON.
No. 55118.
Supreme Court of Mississippi.
November 23, 1983.
Rehearing Denied December 14, 1983.
*1323 David O. Butts, Tupelo, for appellant.
W.P. Mitchell, Mitchell, Eskridge, Voge, Clayton & Beasley, Dudley R. Carr, Carr & Goodman, Tupelo, for appellee.
En Banc.
DAN M. LEE, Justice, for the Court:
On August 23, 1983, the second democratic election for the office of Chancery Clerk of Lee County, Mississippi was held. The parties to this suit were the candidates in that election. After tabulation of the votes, it was determined that Mr. Clayton was the winner. On September 26, 1983, after losing an appeal to the Lee County Democratic Executive Committee, Mr. Riley filed a petition for judicial review. A special tribunal consisting of Circuit Judge Carlson, and five election commissioners of Lee County denied Riley's appeal. Riley then brought this appeal and alleges that certain absentee ballots cast in the election must be invalidated for two reasons: (1) the failure to follow certain statutory absentee balloting procedures, and (2) failure to secure *1324 the ballots in locked metal ballot boxes.
Riley also filed a petition for a writ of certiorari requesting this Court to command the official court reporter for the special tribunal to transcribe her notes and file the same with the Court. Riley alleges that Section 23-3-51 Mississippi Code Annotated (1972) unconstitutionally restricts this Court's review of the facts as found by the special tribunal.
The special tribunal made a unanimous finding of fact which was concurred in by Judge Carlson who placed it into the record. Prior to that finding the parties had entered into stipulations concerning the number of votes involved in the contest. It was stipulated that there were 486 absentee votes, of which 306 were marked for Clayton and 180 for Riley. There were also 8,374 machine votes for Clayton and 8,419 for Riley. That made a total of 8,680 for Clayton and 8,599 for Riley. It was further stipulated that of the 274 absentee votes challenged in this suit, 256 are involved in the outcome of this election.
The findings of fact made by the Lee County Commissioners and Judge Carlson are that Mrs. Fay H. Estes had been Circuit Clerk and Registrar of Lee County for 18 years and had followed the same absentee voting procedure for approximately the last 10 of those years. When someone came into the office and wanted to vote an absentee ballot, the regular procedure was to check their eligibility as an elector and then provide them with a ballot, which would be marked outside of the clerk's or deputy's presence but within their sight. The clerk would then sign the attestation form as a witness and place the ballot in a small sealed envelope which was then placed in a large brown envelope. The large brown envelope was clamped but left unsealed. The large brown envelopes were kept behind the counter in the clerk's office. Sometimes, they were locked up in a drawer at night, but that was not always the case. Regardless, the clerk's office was locked at the end of each work day. As a general rule, no metal ballot boxes were used in Lee County.
In the case of a physically incapacitated voter, the request for an absentee ballot often was made over the phone. These requests came from either the absent voters themselves or from relatives, friends, and even candidates for various offices. After receiving such a telephone request for an absentee ballot for a physically incapacitated voter, the clerk verified that the voter was eligible to vote and either mailed an absentee ballot or personally delivered it to the elector. If the ballot was mailed, the registrar or her deputy enclosed the required instructions, application and envelope. When the mailed ballot was returned, the registrar followed the same procedure as when the absentee voter came to her office. In other words, she placed the sealed envelope with the ballot in it in a large brown precinct envelope. If the request was made by the absentee voter that the ballot be personally delivered, the registrar or her deputy made some notation of that fact and would at some point go to the house, hospital or nursing home where the absent voter was located and personally deliver the ballot. Once the ballot was delivered, essentially the same procedure would follow as when absentee voters voted in the clerk's office. If the ballot was taken to the physically incapacitated voter during regular office hours, the registrar or her deputy would return to the office the same day and follow the same procedure by placing the sealed envelope with its contents in the designated large brown precinct envelope. If the ballot was taken to the physically incapacitated absent voter after regular office hours, the registrar or her deputy would take the sealed envelope home and return it to the registrar's office the next working day. Whenever ballots were personally taken to the physically incapacitated absent voters, no written instructions were taken but the registrar or her deputy would verbally instruct the absentee voter as to the proper procedure in casting their ballot.
The special tribunal also found that in performing the function of voting absentee voters outside of the office by personally delivering their ballots, the registrar and her deputies felt they were rendering a *1325 necessary and vital service to the physically incapacitated citizens of the county. The tribunal specifically found that there were no allegations nor any proof that the registrar or her deputies exercised or attempted to exercise any influence upon absentee voters, nor were there any allegations or proof that any fraud or intentional wrong-doing was committed by the registrar or her deputies in following the above outlined procedure. This above described procedure was followed in all forty precincts and not limited to any particular area of the county.
We will first address Riley's petition for writ of certiorari. In his petition, Riley alleges that the special tribunal excluded material facts in its finding of fact.
Section 23-3-51 Mississippi Code Annotated (1972) reads as follows:
Within three days after judgment rendered, unless a longer time not exceeding four additional days be granted by the trial judge, the contestant or contestee, or both, may file an appeal in the supreme court upon giving a cost bond in the sum of three hundred dollars, together with a bill of exceptions which shall state with appropriate fullness the point or points of law at issue with a sufficient synopsis of the facts to fully disclose the bearing and relevancy of the said points of law, the said bill of exceptions to be signed by the trial judge, or in case of his absence or refusal, or disability, by two disinterested attorneys, as is provided by law in other cases of bills of exception. If the findings of fact have been concurred in by all the commissioners in attendance, provided as many as three of the commissioners are and have been in attendance, the facts shall not be subject to review on appeal, and the bill of exceptions shall not set up the evidence upon which the facts have been determined. But if not so many as three of the commissioners are and have been in attendance or if one or more of the commissioners dissent, a transcript of the testimony may be filed with the bill of exceptions, or within such short time thereafter as the supreme court may allow, and the supreme court, upon a review thereof, may make such finding upon the facts as the evidence requires, giving only such consideration as the court may think warranted to the presumption of correctness of the conclusions of the trial judge. The appeal shall be immediately docketed in the supreme court and referred to the court en banc upon briefs without oral argument, unless the court shall call for oral argument, and shall be decided at the earliest possible date, as a preference case over all others, and such judgment shall be entered and certified as the trial tribunal shall have entered and certified, with the same effect as had such judgment been entered by the trial tribunal and no appeal had been taken therefrom.
Mr. Riley argues that this statute unconstitutionally limits this Court's power of review. This Court has stated on numerous occasions that the right to appeal is a statutory privilege granted and defined by the legislature. Miller Transporters, Ltd. v. Johnson, 252 Miss. 244, 172 So.2d 542 (1965); State ex rel Patterson v. Autry, et al., 236 Miss. 316, 110 So.2d 377 (1959); McMahon v. Milam Mfg. Co., 237 Miss. 676, 115 So.2d 328 (1959); Jackson v. Gordon, 194 Miss. 268, 11 So.2d 901 (1943). We have also specifically addressed this Court's appellate review in election contests. In Berryhill v. Smith, 380 So.2d 1278 (Miss. 1980), this Court held that it would not review the facts as found by a special tribunal where three of the commissioners concurred in the presiding judge's findings and one member was absent while another abstained. We held:
"The concurrence of the three commissioners who participated in the decision making process fulfilled the requirements of section 23-3-51, there having been no dissents, so that the findings of fact by the judge are not subject to review by this Court."
380 So.2d at 1280.
Accord, Allen v. Funchess, 195 Miss. 486, 15 So.2d 343 (1943). In Allen the Court stated that it was statutorily barred from reviewing the facts of any election appeal where all of the commissioners in attendance have concurred in the findings of the special tribunal. The Court went on to say that

*1326 "In such a case the only recourse by an appellant would be to show that there was either (1) no evidence whatever to sustain the findings, or (2) what would amount to the same thing, that there was no substantial evidence in support of the findings."
195 Miss. at 495, 15 So.2d at 345.
The instant statute is obviously designed to expedite the appeals process in an election case. The necessity for expediency is inherent in the nature of an election contest. By limiting appellate review, the legislature's intent was obviously to hasten the final determination of the election contest while still permitting some form of appeal. That such procedure may at times fail is a matter for the legislature to address as this Court has so often stated that the right to appeal is a matter solely for the legislature to determine. Therefore, Riley's petition for writ of certiorari is denied.
The next question presented is whether the registrar's practice of personally delivering the absentee ballots to physically incapacitated voters is such a violation of the absentee voting statutes as to render those ballots void. Section 23-9-605 Mississippi Code Annotated (Supp. 1983) reads:
Any elector desiring an absentee ballot as provided in this article may secure same if:
(1) Not more than fifteen (15) days nor later than 5:00 p.m. on the second day immediately prior to such election, he shall appear in person before the registrar of the county in which he resides, or, for municipal elections, he shall appear in person before the city clerk of the municipality in which he resides, and shall execute and file an application as provided by section 23-9-107.
(2) Within thirty days next prior to any election, any elector who cannot comply with subsection (1) of this section by reason of temporarily residing outside the county or by reason of being physically incapacitated, may make application for an absentee ballot by mailing the appropriate application to the registrar. Only persons temporarily residing out of the county of their residence or physically incapacitated persons may obtain absentee ballots by mail, under the provisions of this subsection. Such application shall be sworn to and subscribed before an official who is authorized to administer oaths or other official authorized to witness absentee balloting as provided in this chapter, said application to be accompanied by such verifying affidavits as is required by this article. The registrar shall send to such absent voter a proper absentee voter ballot within twenty-four hours, providing ballots are available, containing the names of all candidates who qualify or the proposition to be voted on in such election, and with such ballot there shall be sent an official envelope containing upon it in printed form the recitals and data hereinafter required.
This section authorizes the registrar to mail absentee ballots to voters temporarily residing out of the county and those who are physically incapacitated. We have previously held that unless a statute expressly declares that a particular act is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided such act of irregularity is not calculated to affect the integrity of the election. Gregory v. Sanders, 195 Miss. 508, 15 So.2d 432 (1943); Hunt v. Mann, 136 Miss. 590, 101 So. 369 (1924). Review of the wording of the statute does not reveal any language which expressly declares that the use of the postal service by which to send an absentee ballot to a voter is essential to the legislative scheme.
Section 23-9-409 Mississippi Code Annotated (Supp. 1983) requires that if a ballot is mailed to an absentee voter, the registrar must enclose a copy of printed instructions. That section reads:
(1) The registrar shall enclose with each ballot sent to an absent elector separate printed instructions furnished by him containing the following:
(A) All absentee voters, excepting those physically incapacitated, who mark their ballots in the county of the residence shall use the registrar of that county *1327 as the witness. Said absentee voter shall come to the office of the registrar and neither the registrar nor his deputy shall be required to go out of the registrar's office to serve as an attesting witness.
(B) Upon receipt of the enclosed ballot, you will not mark same except in view or sight of the attesting witness. In the sight or view of the attesting witness, mark the ballot according to instructions.
(C) After marking the ballot, fill out and sign the "Elector's Certificate" on back of the envelope so that the signature shall be across the flap of the envelope so as to insure the integrity of the ballot. Have the attesting witness sign the "Attesting Witness Certificate" on back of the envelope. Place necessary postage on the envelope and deposit it in the post office or some government receptacle provided for deposit of mail so that the absent elector's ballot, excepting presidential absentee balloting, will reach the registrar in which your precinct is located not later than twelve noon on the day preceding the date of the election or by personally delivering such ballot to the registrar's office not later than 5:00 p.m. on the second day immediately preceding the election.
Any notary public, United States postmaster, United States postal supervisor, clerk in charge of a contract postal station, or any officer having authority to administer an oath or take an acknowledgment may be an attesting witness. If a postmaster, assistant postmaster, postal supervisor, or clerk in charge of a contract postal station acts as an attesting witness, his signature on the elector's certificate must be authenticated by the cancellation stamp of their respective post offices. If one or the other officers herein named acts as attesting witness, his signature on the elector's certificate, together with his title and address, but no seal, shall be required. Any affidavits made by an absent elector who is in the armed forces may be executed before a commissioned officer, warrant officer, or uncommissioned officer not lower in grade than sergeant rating, or any person authorized to administer oaths.
(D) When the application accompanies the ballot it shall not be returned in the same envelope as the ballot but shall be returned in a separate pre-addressed envelope provided by the registrar.
(2) The foregoing instructions required to be mailed by the registrar to the elector shall also constitute the substantive law pertaining to the handling of absentee ballots by the elector and registrar.
Although that section specifically states that "Neither the registrar nor his deputy shall be required to go out of the registrar's office to serve as an attesting witness," there is no specific prohibition against the personal delivery of absentee ballots.
Riley argues that section 23-9-613 requires that any elector obtaining an absentee ballot under the provisions of section 23-9-605(2) is required to return his ballot to the registrar by mail. Section 23-9-613 reads:
The elector obtaining an absentee ballot under the provisons of subsection (2) of section 23-9-605 shall appear before any official authorized to administer oaths or other official authorized to witness absentee balloting as provided in this chapter. The elector shall exhibit to such official his absentee ballot unmarked and thereupon proceed in secret to fill in his ballot. After the elector has properly marked the ballot and properly folded it, he shall deposit it in the envelope furnished him. After he has sealed the envelope he shall deliver it to the official before whom he is appearing and shall subscribe and swear to the affidavit provided for in section 23-9-611, which affidavit shall be printed on the back of the envelope.
After the completion of the requirements of this section, the elector shall mail the envelope containing the ballot to the registrar in the county wherein said elector is qualified to vote. Said ballots must be received by the registrar prior to *1328 twelve noon on the day preceding the election to be counted.
This statute has effect only when the elector appears before an official authorized to administer oaths or other official authorized to witness absentee ballots other than the registrar or her deputies. This statute has no purpose when the ballot is marked in the presence of the registrar or her deputies.
We hold that in the absence of any allegation or proof of fraud or tampering that the personal delivery of absentee ballots by the registrar or her deputies to physically incapacitated voters does not void those ballots.
Riley next complains that the failure of the Lee County Registrar to use metal ballot boxes in which to store the absentee ballots rendered those ballots void. Section 23-5-111 Mississippi Code Annotated (1972) states that the commissioners of elections in every county must procure a sufficient number of ballot boxes. The immediately following section, 23-5-113 states that
"The failure to distribute to the different voting places the poll books containing the alphabetical list of voters, or the ballot boxes provided for, shall not prevent the holding of an election, but in such case the managers shall proceed to hold the election without the books and ballot boxes, and shall provide some suitable substitute for the ballot boxes, and conform as nearly as possible to the law in the reception and disposition of the official ballot boxes."
The key in deciding whether an act not in strict compliance with the statutory election procedures renders that election void is whether the act is such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain. Ulmer v. Currie, 245 Miss. 285, 147 So.2d 286 (1962); Sinclair v. Fortenberry, 213 Miss. 219, 56 So.2d 697 (1952); Gregory v. Sanders, 195 Miss. 508, 15 So.2d 432 (1943).
In the case of Barnes v. Ladner, 241 Miss. 606, 131 So.2d 458 (1961), this Court held that the use of cardboard boxes was a suitable substitute for the ballot boxes and was not such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election. This Court certainly does not wish to encourage the substitution of manila envelopes for locked metal ballot boxes. To the contrary, we must strongly recommend that the Lee County Registrar obtain with all due haste a sufficient number of metal ballot boxes in which to retain absentee ballots. However, we cannot say that in the absence of allegations or proof of fraud that there has been such a total deviation from the statutory requirements as to destroy the integrity of the election.
Although there is a strong public policy in attempting to preserve the will of the electorate as reflected by the tabulation of all of the votes, we take this opportunity to remind registrars throughout the state that they invite election contests, uncertainty and the opportunity for fraud by failing to pay close heed to the election statutes whether they be mandatory or directive. Any expense or burden such compliance creates is trivial when compared to the value of the goal of maintaining our Republic. Integrity of our government can be no greater than the integrity of elections which put our governmental officials in office. It is therefore the duty of every registrar to endeavor to comply with the election statutes regardless of the personal inconvenience it may create.
Based on all of the foregoing, the decision of the Circuit Court is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.