**McWhirter TAYLOR et al., Plaintiffs-Appellants,**

v.

**MONROE COUNTY BOARD OF SUPER-VISORS et al., Defendants-Appellees.**

**No. 27713.**

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1970.

Richard B. Booth, Aberdeen, Miss., for appellants.

Fred B. Smith, Ripley, Miss., Jack Norris Thomas, Amory, Miss., for appellees.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal seeks an order of this court requiring the holding of a special election under newly created county supervisor districts to oust the present five supervisors and supplant them by those to be chosen under a one-man one-vote redistricting order by the trial court entered in April 1969. The terms of the members chosen under the old mal-apportioned districts, now outlawed, commenced in January, 1968, and expire in January, 1972—some twenty-two months hence.

This case presents a difficult choice of equities, more difficult perhaps than it might have been if the appeal had been expedited and heard shortly after the adverse judgment of the trial court in April, 1969.[1]

The suit was originally filed on June 23, 1967. It alleged an extreme case of malapportionment. Monroe County, Mississippi has five supervisors, constituting the Monroe County Board of Supervisors. The five were elected from five districts; one was elected *from* and *by* each district. Districts varied in population from 2,813 to 11,257. At the time of the first hearing, a three-judge district court had decided the Texas case, Avery v. Midland County, Texas, 430 S.W.2d 487, finding that the one-man one-vote principle applied to county governments of the kind enjoyed by the people of Monroe County; so, too, had the United States District Court in this Southern District of Mississippi in Martinolich v. Dean, 256 F.Supp. 612 (D.C. S.D.Miss., 1966). However, the then trial judge noted that the Supreme Court had granted a writ of certiorari in Midland County and he denied relief. This decision was based partially on the fact that the current election process

---

1. This is not an invitation to every unsuccessful litigant, even in cases of wide public impact, to seek to expedite an appeal because constitutional rights are concededly being temporarily delayed. However, this case may be said to have changed in equities somewhat by the passage of time. When the relief in form of a new election was denied in the trial court 31 of 48 months of the incumbents' terms of office were still to run; by the time this decision can be made a little less than 24 of the 48 months remain. No effort was made of the Plaintiff-Appellants to obtain an expedited hearing by this court.

**1040**

had already been set in motion (all that had occurred was that the qualifying date for party primaries had expired). The election proceeded and the Supreme Court thereafter affirmed Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45. Thus, this court reversed the judgment of the trial court. In doing so, the court noted that the plaintiffs had not requested a reapportionment of districts—that they had, in fact, argued that no changes would be possible—but demanded election of all supervisors by vote of all voters of the county. Nevertheless, the court said:

> "This leaves to the governing authorities of this County two options. They may reapportion the five districts so as to leave each of them with a population substantially equal to that of the others, or they may allow a supervisor to be chosen from each of the districts as presently constituted but by elections in which the voters of the entire county will participate, Dusch v. Davis, 387 U.S. 112, 87 S.Ct., 1554, 18 L.Ed. 656 (1967), cited with approval in Avery v. Midland * * *." 5 Cir. 1968, 394 F.2d 333.

The court remanded the case "for further proceedings expeditiously conducted consistently with the holdings of the Supreme Court and for appropriate relief grounded thereon."

Thereupon, plaintiffs filed a motion for "expeditious relief" by requiring the Board to decide whether to reapportion, and if it did so, to proceed to carry it out. The trial court allowed the Board until October 15 to notify the court of its decision and to propose the exact plan by January 1, later extended to February 1, 1969. The Board engaged a planning group to explore the possibilities and later accepted the recommended action that the districts could be realigned with uniform population (with a variance of only 74) and in all other respects, practicable. The plan submitted to the court described the new districts by metes and bounds and delineated them in large scale maps that took into account a complete head count. After a hearing, the court accepted this plan and ordered it into effect. The court further held:

> "That at the next regular primary and general election in the State of Mississippi, supervisors and all other beat or district officers of Monroe County shall be elected from and in the five new districts, the boundaries of which are set forth in said order, and the board of Supervisors and other county officials of Monroe County, Mississippi, shall take all necessary statutory steps towards making the necessary change in the boundaries of the voting districts or precincts of said county and the places of holding elections therein, and relative to reregistration and new or revised poll books for said county, to the end that the next regular primary and general election in said county, to be held in the year 1971, may be properly and legally held and conducted. That the motion of the plaintiffs for an immediate election, prior to said regular primary and general election to be held in 1971, is hereby overruled, and that this order of redistricting shall not affect the existing term of office of any officials of said county."

Plaintiffs thereupon filed a motion asking the court to require a new election. They strongly urge that all the citizens of Monroe County are without constitutional government, because the supervisors were elected by an improper electorate; that the principle of law enunciated by the Supreme Court in Avery v. Midland County relates back to the time of the first decision of the late Judge Clayton; that therefore the election results of 1967 should be turned back with the clock under a principle which they call the "subjudice" rule. This rule has been stated thus: "A change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law." Ziffrin, Inc. v. United States, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 626 (1943). Thus, they contend that the application of the law of Midland County requires that an interim special election must be held, because it

must be taken that all parties have been operating under a kind of lis pendens knowing that if plaintiffs established their legal position the 1967 election would be held void.

The record before us does not contain any evidence touching upon the question of how involved is the procedure or how much time would be required for the defendant supervisors to arrange the voting precincts or wards within the new voting districts, nor how long it would take to separate the names on the present voters' list and place them on the precinct lists. The plaintiffs proceeded before the trial court as if they were entitled to a special election *as a matter of right*, regardless of the volume of time or operations necessary to bring this about. On the other hand, the defendants proceeded on the theory that the present supervisors had a right to fill out their terms, as a matter of law. They, and the trial court, stressed requirements of the Mississippi law, particularly that provision of § 2870 Miss.Code of 1942, which the trial court said "is a guide to our present problem." That provision was contained in an act which gives to the supervisors of any county the right to change district lines, under certain specified conditions. It then provides:

"This act shall not be construed to affect any supervisor *now* holding office until the expiration and end of his present term of office." (Emphasis added.)

The court said, "That would be very clearly the situation if the Monroe County Board of Supervisors had, without federal court litigation, redistricted this county. There is no valid reason why there should be any difference merely because there is an order of the federal court approving[2] the particular redistricting that the Board has seen fit to present."

 This statement, with deference to the judgment of the trial court, is faulty in two respects. (1) By its literal language the provision applies only to supervisors "holding office *now*." "Now" was the year of passage of the Act—1942. (2) While it is desirable, and almost mandatory for federal courts, when overriding state statutes and constitutions to prevent an infringement of someone's Fourteenth Amendment rights, to avoid running roughshod over any but the offending statute or constitutional provisions, it is implicit in all the reapportionment cases from Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 down to the most recent case that, where it is necessary to override specific provisions of state law to afford adequate relief, the state statutes must yield. See particularly Reynolds v. Sims, 377 U.S. 533, 554, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and Allan v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1, 1967 (also cited as Fairley et al. v. Patterson, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1.)

The trial court also embodied findings in its order denying the motion for a new election as follows:

"* * * having considered the public interest in the certainty of the operations of the various district offices of the county, and the effect which an immediate new election might have on the Justice of the Peace, Constable, County Election Commissioners, and other beat officers who exercise important attributes of public power; and having considered the fact that before an election can be called and held in the newly organized districts, it will be necessary that the Board of Supervisors and the county election commissioners of the county set up new voting district or precinct lines, having a complete reregistration of the voters of the county, make up new poll books and all other machinery involved in the holding of an election, which will take a great deal of time, and which will affect all other district

---

2. In point of fact, this redistricting by a different procedure thought to be less

satisfactory was *required* by this court—not "approved."

or beat officers of the county, and after all this was done in all probability it would be a very near to the next primary and general election to be held in the State of Mississippi.

"Therefore, it is hereby accordingly ordered and adjudged that the redistricting plan already adopted and set up by the Board of Supervisors on January 24, 1969, as shown by its order of that date hereinbefore referred to, and the boundaries of each of the five supervisors districts of said county, are hereby approved and confirmed, and no further action of the Board of Supervisors in establishing said boundaries will be required, as they were already established subject to the approval of this Court, by said order of January 24, 1969."

These findings doubtless represented the trial court's best judgment based on general knowledge outside the record, for there is nothing in this record to support them except as to the state requirements touching on voting precincts. It may well have been that, since the record *did* disclose without dispute, and, as found by the court [3] that an actual head count had been taken, identifying each county resident with the house in which he was living, and that the plan had been generally publicized throughout the county and had "received widespread public acceptance," the dividing of the registered voters into precincts might have been a very simple and brief task.

■ We conclude that the trial court erred in not exploring these facts before summarily rejecting the motion for requiring a new election. While we fully recognize that the holding of court ordered elections is undesirable at best, recent legal history teaches us all that circumstances do sometimes require such relief. See Reynolds v. Sims, supra, Hodnett v. Amos, 394 U.S. 358, 1969, 89 S.Ct. 1101, 22 L.Ed.2d 336.[4] The Mississippi courts have also not been averse to the requiring of a new election when defects have necessitated the invalidating of the regularly scheduled election. See Ulmer v. Currie, 245 Miss. 285, 147 So.2d 286; Wallace v. Leggett, 248 Miss. 121, 158 So.2d 746; and Hayes v. Abney, 186 Miss. 208, 188 So. 533. Although these cases arose under the Corrupt Practices Act of the State, it would seem that the inviolability of an election that is conducted under terms that violate the constitutional rights of the electorate is no greater than one which transgresses state election procedural requirements.

Much comfort, it seems, can be taken by Plaintiffs-Appellants from the language of this court in its prior decision. Where we spoke of "further proceedings expeditiously conducted consistently with the holdings of the Supreme Court and for appropriate relief grounded thereon," we surely meant something more than correcting the abuse in time for an election for a term to commence three and a half years in the future.

■ It seems, therefore, we conclude that the trial court should have ascertained "expeditiously" just how much time and effort would be involved in preparing for and holding a special election which would certainly have permitted legally elected officials to have served at least more than half the current term of office. We further con-

3. A comprehensive house-to-house census was taken by employees and representatives of this firm employed by the county Board of Supervisors and, after checking and rechecking, they developed a present population in Monroe County of 31,645 persons, *having each one of those persons identified by name and by location of residence.* The professional firm was then able to determine the excess number of persons in District 1, which was heavily overpopulated, and also in District 3, somewhat less overpopulated, and also determined the need to increase population requirements in old Districts 2, 4 and 5.

4. In this case this contention was successfully made that certain Negro candidates had improperly been kept off of a county election ballot. Notwithstanding this fact that the election was well past, the Supreme Court required the holding of a new election.

clude that the trial court should still make the ascertainment and, if it is possible to hold such a special election on or before July 1, 1970, this should be required. From the record and even from the matters argued outside the record we perceive nothing that would make such a schedule impossible.

■ We would be less than candid if we did not take note, in dealing with the equities of the parties here, of the provisions of the Voting Rights Act of 1965. It is particularly necessary to mention this because of the argument made by the Defendants-Appellees that there must be "reregistration" for the next election or that extensive "purging" of the lists may be required. So far as we are aware, there are no racial overtones or implications in any facet of this litigation, but, because of the fact that it was the registered voters of the summer of 1967 who were prejudiced in their constitutional rights, this court must include a caveat in its judgment dealing with the voters list. We recognize that additional persons may have registered under normal procedures since the election of the present Board of Supervisors. There may also have been regular purging of the lists. To the extent, however, that it is now possible, the trial court should at a minimum require that the voters list used in the 1967 elections, with legal additions thereto and without any future purging, be used for the next election for Supervisors of Monroe County, be it special or general.[5] Because of the time element involved, the judgment of this court will issue as and for the mandate of the court immediately, and no stay will be granted pending the filing or consideration of any motion for rehearing.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

5. It was not briefed nor argued before us whether the proposed change of districts or any other matter necessary to carry out this judgment and that of the trial court require any action under the provisions of the Voting Rights Act. While none is apparent, it will be the duty of the parties to obtain any such clearances as may be required.