**Mary GREEN et al.**

v.

**Robert F. BURNS, Secretary of State of the State of Rhode Island, et al.**

**Civ. A. No. 77–247.**

United States District Court,
D. Rhode Island.

June 10, 1977.

William Y. Chaika, Cranston, R. I., Anthony J. Bucci, Walter R. Stone, Providence, R. I., for plaintiffs.

J. Peter Doherty, Sp. Asst. Atty. Gen., Andrew M. Cagen, Providence, R. I., for defendants.

Thomas A. McCormick, pro se.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

On May 17, 1977, this Court held that plaintiffs and the class of absentee and shut-in voters they represented had been deprived of their constitutionally protected rights to cast votes equally with other voters in the Providence 10th ward primary election on March 29, 1977. The defendants then before the Court were the Secretary of State, the Providence Board of Canvassers, and Thomas A. McCormick, whose action in the state courts resulted in the disqualification of all the absentee votes cast in that primary. The Court ordered, in relevant part

> that the defendants are enjoined to take all necessary steps to hold a new primary for the 10th ward of the City of Providence at the earliest possible date consistent with the requirements of state law . . . .[1]

On June 6, 1977, because no primary had yet been scheduled, the plaintiffs moved that the defendants be required to show cause why they should not be held in contempt for violating the May 17 order referred to above. Plaintiffs claimed that none of the defendants had taken steps to place on the agenda of the Providence City Council a request that the Council take action to implement the Court's order. Further, plaintiffs alleged that a resolution of a council member from South Providence regarding setting a new election date had been improperly and dilatorily referred to the Public Welfare Committee, which (they claimed) had never handled any election matters in the past.

■ Because the members of the City Council were not at that time parties defendant in this action, the motion to hold them in contempt could not succeed. Fed. R.Civ.P. 65(d).[2] Nevertheless, it was apparent that the Council's cooperation would be necessary, because the Council is required to set a date for any special primary.[3]

1. *Griffin v. Burns*, 431 F.Supp. 1361 at 1369 (D.R.I., 1977).

2. Fed.R.Civ.P. 65(d) provides:
   Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

3. See Section 2.9 of the Providence Charter Laws, which provides in relevant part:
   Sec. 2.9. Powers of council as to elections inspections, public buildings and institutions.
   Without in any way abridging the powers presently existing in the city, and without in any way limiting the generality of the foregoing sections relating to such powers, the council shall have power by ordinance:
   (a) Elections. To provide at the expense of the city for special elections of the qualified voters of the city for the purpose of filling vacancies in the office of councilman or of mayor, or for the submission to said voters at regular or special elections of such questions relating to the city as the council shall by ordinance deem appropriate, and to designate the time and place at which any such special election shall be held; provided, however, that except as otherwise provided in this section, all such elections shall be held in conformity with the election laws of the state. The secretary of state shall, without the necessity of any special authorization from any person or body other than the council, place upon the ballot, or provide space upon and place upon the voting machines, for such questions as are submitted or for the names of such candidates as are running to fill such vacancies as are set forth in the ordinances hereby authorized.
   The Charter Laws are passed by the state legislature, and constitute state, not local, law.
   Section 2.9 is in apparent contradiction to R.I.G.L. 17–15–3, which provides in relevant part:
   17–15–3. Special election primaries.—Party primary elections shall also be held for the purpose of nominating candidates for an office or offices to be elected at any special election. In the event of a special election, the state board shall fix the date or dates on which the various party primary elections shall be held, provided, however, that the all

In an attempt to see if a primary date could be set by the mutual agreement of the parties, the Court held a conference in chambers on June 7. The Clerk of the City of Providence was invited to attend. The Court at that conference assumed the good faith of all parties concerned, and has seen no evidence requiring it to alter that assumption. Nevertheless, it became apparent that no agreement setting a date for the new primary could be reached. The City Council operates under rules and ordinances tightly circumscribing the discretion of any of its representatives to agree to any new primary date. The Council's rules apparently require that the resolution to set an election date be referred to a committee, and thereafter to the full Council. The next meeting of the Council is not scheduled until June 16, and any ordinance passed at that meeting would of necessity have to lay over as long as ten days while the Mayor decided whether or not to sign it. The possibility of holding an emergency meeting of the Council was explored, but such a meeting could be held only on 48 hours notice, and then only if requested by six Council members. The possibility of holding an election before mid-fall, if the City Council were required to act, seemed remote.

In its opinion of May 17, the Court stressed that it was essential that a primary be held as swiftly as possible. Although the 10th ward seat is presently occupied— the previous Council member is permitted to hold over until the vacancy is filled—the voters of the 10th ward are entitled to representation by a Council member who reflects their present choices, not choices made long ago for a limited period of time since expired. The right to democratic representation is fundamental to our political system. A state of affairs whereby citizens are saddled indefinitely with representatives without current mandates, as defined by state law, is constitutionally obnoxious. Hesitant as federal courts are to upset local elections, they are even more careful to avoid such a state of affairs while litigation takes its painfully slow course. *See, e. g., Taylor v. Monroe County Board of Supervisors*, 421 F.2d 1038 (5th Cir. 1970). For that reason, among others, the Court refused to stay its order requiring defendants to take all necessary steps to hold a new election "at the earliest possible date." The Court certainly did not contemplate that a primary would await the decision of the Court of Appeals in this case, which I have been advised will not be before the end of September at the earliest. Nor has the Court of Appeals granted a stay in this case.

It is clear, therefore, that the May 17 order is still in full force and effect. It is reaffirmed. It will be carried out. The plaintiffs are entitled to, and shall receive, an election at the earliest possible date.

◼ In fulfilling their responsibilities to protect citizens against unconstitutional deprivations of constitutional rights, federal courts are extremely reluctant to interfere with matters of deep local concern, including election customs and procedures. Nevertheless, it is clear that state and local laws of undoubted validity must in some cases give way so that established constitutional violations can be remedied. *See, e. g., Rader v. Cliburn*, 476 F.2d 182 (6th Cir. 1973); *Taylor v. Monroe County Board of Supervisors*, 421 F.2d at 1041 and cases cited therein ; *WMCA, Inc. v. Lomenzo*, 238 F.Supp. 916, 921 (S.D.N.Y.1965) (three-judge court).

party primary elections shall have been held by the thirtieth day preceding the date fixed for the special election and provided further that the date or dates so fixed by the state board shall not be a religious holiday or Saturday.

However, it is a general principle of statutory construction that a specific statutory provision controls a more general enactment. *E. g., Cahill v. Goodell*, 20 R.I. 481, 40 A. 1 (1898). The Court also observes that Sec. 2.9 states that the state election laws shall be controlling "except as otherwise provided in this section." *See also* Pub.L. 1966, Ch. 99.

Here, granting (as the Court does) the good faith of all concerned, deferring to the cumbersome procedures required by the City Council will obviously mean an additional lengthy delay of perhaps months in holding an election which is already long overdue. In entering its May 17 order, the Court fully expected that the date for a primary would have been long set by now. This situation is not tolerable. Having determined that the plaintiffs are entitled to prompt relief, the Court reluctantly has decided that it must exercise its discretion by itself setting dates for the primary and general election. This decision is made easier by the Court's understanding of two matters. First, the City Council's responsibility to set a special election date, see n. 3 *supra*, is essentially ministerial. The local interest in making this simple choice of dates is obviously of far lesser magnitude than that reflected in the state statutes and constitutional provisions overridden in *Rader v. Cliburn, supra,* or *WMCA, Inc. v. Lomenzo, supra.*[4] Second, the City Council does not in fact object to the dates here set. Furthermore, once having set these dates it appears that the election can proceed in accordance with all other governing state and local laws.

Therefore, it is Ordered, Adjudged, and Decreed:

1. Plaintiffs' motion to add the members of the City Council as parties defendant in order to effectuate the Court's May 17 judgment is granted. *Lance v. Plummer*, 353 F.2d 585 (5th Cir. 1965), *cert. denied*, 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966). *See also* Fed.R.Civ.P. 19(a); *cf.* Fed.R.Civ.P. 65(d).

2. There being no evidence showing that anyone intentionally violated the terms of the May 17 order, the motion to adjudge in contempt is accordingly denied.

3. The motion for further relief to implement the May 17 order is granted. The primary election in the 10th ward shall be held on July 12, 1977, and the general election shall follow on August 16, 1977. The remaining dates for necessary election activities are set forth in Appendix A, attached hereto and incorporated herein.

4. Plaintiffs' motion for court supervision of the primary is denied, there being an insufficient factual record to support that extraordinary relief.

5. Plaintiffs' prayer for costs is passed, without prejudice to a motion, supported by the necessary affidavits, for attorneys' fees pursuant to 42 U.S.C. § 1988 (Supp.1977). *See Souza v. Travisono*, Civ. No. 5261 (D.R.I., December 20, 1976). *See also* 1976 U.S.Code Cong. and Adm.News, pp. 5908, 5913, and cases cited therein.

### APPENDIX A

| Activity | Statutory Authority | Date |
|---|---|---|
| Primary election | [see Memorandum] | July 12, 1977 |
| Filing Declarations | 17–14–1 | June 16–21 |
| Endorsements | 17–12–11 | June 23 |
| Final day for filing nomination papers with local board | 17–14–11 | June 27 |
| Final day for objections—5:00 p. m. | 17–14–13 | June 28 |
| Final day for filing nomination papers with Secretary of State | 17–14–12 | June 30 |
| Publish notice for absentee and Shut-In applications for primary | | June 18 |
| Last day for final canvass of primary lists | 17–10–6 | June 22–July 7 |
| Final nomination papers | 17–16–14 | June 30 |
| General Election | [see Memorandum] | August 16 |

---

4. For example, in *Rader*, the Court of Appeals for the Sixth Circuit affirmed a district court's determination that members of a county school board should be elected to concurrent terms, overriding a state statute requiring staggered terms.