SMITH, Presiding Justice,
for the Court:
This ease involves a contested election.
Appellant, Roy C. Smith, and appellees, Clifford Granberrg and one Gregory, were candidates for the office of member of the Tunica County Board of Education for Supervisors District Number Three in the General Election held November 2, 1976. This was, of course, the same election in which candidates for a number of other offices were voted upon the most notable having been the office of President of the United States.
In the race in which Smith and Granber-ry were involved, the Tunica County Election Commissioners, over the objection of Smith, certified the results as follows:
NAME OP CANDIDATE PRECINCT 5— PRECINCT 6— WESTSIDE DUBBS TOTAL
Clifford Granberry m 172 299
Oliver Gregory 4 11 16
Roy C. Smith 176 119 295
Those figures gave Granberry a plurality of four votes.
On November 22, 1976, Smith filed in the Circuit Court of Tunica County a petition to contest the election insofar as it affected his race for member of the Tunica County Board of Education for Supervisors District Number Three.
The contest was based upon an alleged total or radical departure by managers of the election at the Westside box in Precinct 5, from statutory requirements said to be mandatory.
Through inadvertence, (there is no charge of fraud or intentional wrongdoing), ballots printed for the Watsonville Precinct were delivered to the Westside election holders along with the ballot box, and those printed for the Westside box were delivered to Watsonville. No Board of Education election was being conducted in the Supervisors District in which the Watsonville Precinct is situated and consequently the Watsonville ballots did not have printed upon them the names of Smith, Granberry and Gregory, the candidates seeking the office of member of the Board of Education from Supervisors District Number Three. It is unclear whether this mix-up in the delivery of ballots was that of the printer or of a deputy circuit court clerk. It is, however, not suggested that any candidate was involved.
The Westside Precinct polls opened at about 7:00 in the morning and, after ten persons had voted, it was discovered that *557 the ballots used by them were those which had been printed for the Watsonville Precinct and did not carry the names of the candidates for election to the Tunica County Board of Education. Therefore, at that time, no votes had been cast in the Board of Education race.
The Westside managers of election suspended operations and were able to obtain the correct ballots from Watsonville which actually had been printed for use at West-side and which had been sent to Watsonville by mistake. Nine of the ten persons who had voted and used the Watsonville ballot on which the contest for the Board of Education, Supervisors District Number Three, did not appear, were located and these nine persons returned and voted, this time using the correct official Westside ballot. In effect, the Westside election managers, upon discovering the mix-up in the ballots, threw out the ten ballots already cast, on which the race for member of the Board of Education did not appear, and started over, using the correct official Westside ballots. At that time, as has been said, since the Board of Education election was not on the Wat-sonville ballots first used, no votes had been cast in that race.
At the request of appellant Smith the Circuit Court held a preliminary hearing in his contest of the election as to whether the election was invalid as a matter of law. At this hearing the circuit clerk testified as to the fact of the mistake which had been made in sending the official ballots for Watsonville Precinct to Westside Precinct and those for Westside Precinct to the Wat-sonville Precinct. He said that the ballots had been placed in the boxes for transmission to the various precincts by his deputy according to the way the designation of the precincts had been placed on the packages by the printer. There was testimony from the only one of the ten persons who had voted using a Watsonville ballot on which the Board of Education election did not appear who did not return and vote a proper ballot, that if he had voted in the Board of Education race he would have voted for appellant Smith. There was testimony from three of the first ten who had voted using the Watsonville ballot that afterward they had told others that the election for Board of Education did not appear on the ballot they had used. It is suggested but not shown that any person who had been so informed failed to vote although it does appear that there was a light vote and that many electors did not vote in the election.
The trial judge overruled Smith’s motion, rejecting the argument that the circumstances outlined above had been fatal to the election as a matter of law, and ordered that a jury be impanelled. Counsel for Smith then advised the court that the im-panelling of the jury would be useless as no more evidence would be offered on behalf of Smith in support of his contest. Thereupon the judge directed the jury peremptorily to find for Granberry. From the judgment entered pursuant to the verdict declaring Granberry to have received the greatest number of legal votes and to have been elected, this appeal has been prosecuted.
Mississippi Code Annotated section 23-5-187 (1972) provides the manner in which the election of county officers may be contested. This procedure seems to have been followed in the trial court and a peremptory instruction- given by the trial court appears to have been in order since appellant Smith declined to offer any evidence before the jury, unless it had been shown that there was such a total or radical departure from mandatory statutory requirements as to render the election invalid. It is the position of appellant that there was, indeed, such a total or radical departure by the managers of the election at Westside Precinct from, it is said, the mandatory provisions of section 23-5-143, which is as follows:
In case the official ballots prepared shall be lost or destroyed, the commissioners of election shall have like ballots furnished in place of those lost or destroyed, if time remain therefor. And if from any cause there, should be no official ballots or an insufficient number at a voting place, and not sufficient time in which to *558 have them printed, the ballots may be written; but, if written by any one except the voter alone for himself, the names of all candidates shall be written thereon, without any mark or device by which one name may be distinguished from another, and such ballots shall be marked by the voter as provided for printed ballots. If the manager designated fail to have the ballots at the voting place at the proper time, or if he fail to distribute them, the managers, or those of them present at the election, shall provide ballots, and select some suitable person to distribute them, who shall take the oath required of the managers, and distribute the ballots according to law. [Mississippi Code Annotated, section 23-5-143 (1972)].
The official ballots prepared for the Westside Precinct must be deemed to have been “lost” within the meaning of section 23-5-143, Mississippi Code Annotated (1972), until their whereabouts were discovered and they were obtained by the managers at Westside. The legislative purpose in the enactment of the above statute was to provide against the failure of an election because official ballots had been lost or destroyed and contemplates improvisation in such cases in order to insure that the election will be held notwithstanding. In this case the lost official ballots were discovered and were the ballots, and the only ballots, actually used in the Board of Education election. Under the circumstances, it would be unreasonable to construe the statute as mandatorily requiring that additional identical ballots should have been printed or that ballots be written out in longhand. The action of the election managers at the Westside Precinct appears to have been practical, reasonable and justified and it has not been shown to have resulted in unfairness or prejudice to any candidate in the race for member of the Board of Education of Tunica County Supervisors District Number Three. There is no evidence that voters actually were kept away from the polls by reason of it. Only one of the ten persons who had voted before the mix-up was discovered, and thus had not voted in the race at all, failed to return and vote an official correct ballot. This one person testified that if he had voted in the race he would have voted for Smith and his vote should be added to the total received by Smith in the election. However, even so, Granberry received the greatest number of legal votes cast in the Board of Education election. There was nothing wrong with the ballots actually used and counted in that race in the Westside Election Precinct.
Appellant relies chiefly on Clark v. Rankin County Democratic Executive Committee, 322 So.2d 753 (Miss.1975) and Keller v. Toulme, 7 So. 508 (Miss.1890). There is little resemblance between the present case either to Clark or Keller. In Clark the election managers opened the boxes and began counting votes while the election was still in progress. In Keller the ballots themselves actually used in the election were printed in a manner which directly violated the terms of the controlling statute. In the present case, while there was some delay, only official Westside Precinct ballots were actually used.
A much greater delay would have resulted if, rather than using the official West-side ballots already printed, the managers of election had either had new ballots printed or had written out ballots in longhand.
In the race here under consideration, at most there was a delay before any ballots with this race upon them became available. In the course of this delay, ten persons voted at the Westside box but not, of course, in this race. Of these, nine returned after the correct ballots were available and cast ballots for the first time in this race. The only one of the ten early voters who did not return and vote in this race testified that if he had voted he would have voted for Smith. His vote, in fairness, must be counted for Smith. Thus, nine of the ten early voters, and all subsequent voters who voted in this race used correct official ballots. There is no charge of fraud and no prejudice to Smith’s rights has been demonstrated. The managers correctly chose to use the already printed official ballots when they had been obtained rather than to have *559 more ballots printed or to write out ballots in longhand. No one was turned away during the delay nor was there anyone who offered to vote who was not permitted to vote. We do not have before us any question as to the validity of any other election held at the Westside Precinct that day. There is nothing upon which a finding can reasonably be based that the results certified by the Tunica County Election Commissioners in the Board of Education race do not reflect correctly the true will of the voters at the Westside Precinct, the single exception being that one vote should be added to the total received by Smith.
The judgment appealed from is, therefore, affirmed.
AFFIRMED.
PATTERSON, C. J„ INZER, P. J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.