KITCHENS, PRESIDING JUSTICE, FOR THE COURT:
 

 ¶ 1. The Board of Supervisors of Tunica County, Mississippi (the Board), ordered an
 
 ad valorem
 
 tax levy for fiscal year 2014-15 and increased the millage rate from the previous year. After entering the order, the Board advertised a public hearing of the proposed
 
 ad valorem
 
 tax levy in the Tunica
 
 Times
 
 . The hearing took place and various taxpayers appeared to voice objections and concerns. Aggrieved by the actions of the Board, one such taxpayer, HWCC-Tunica, LLC (HWCC), which owns and operates Hollywood Casino-Tunica, filed a bill of exceptions in the Circuit Court of Tunica County and paid the taxes under protest. The trial court, finding that the failure of the Board to comply with statutory notice and public hearing requirements rendered the tax levy unlawful, ordered a refund. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On August 14, 2014, the Board of Supervisors of Tunica County, Mississippi (the Board), determined that the county's Tax Assessor Norma Anderson had "completed and filed the 2014 real and personal assessment rolls of Tunica County, Mississippi ...." Before the Board at that time was a document entitled "August Recaps 2014," which showed that the assessed value of property in Tunica County had decreased in the amount of $4,678,672, a 1.87% decrease from the 2013 assessment.
 

 ¶ 3. On August 25, 2014, County Administrator of Tunica County Michael Thompson gave a presentation to the Tunica County Board of Supervisors regarding the county budget for the 2015 fiscal year. His presentation informed that the county's existing millage rates were "[i]nadequate and unsustainable." He cited "[d]ecreasing assessed property values," long-term debt figures, "[i]nadequate or nonexistent fees for essential services," and a dependency on tax revenue from a declining gaming industry. An advertisement was published in the Tunica
 
 Times
 
 on August 22, 2014, according to a proof of publication. This advertisement stated:
 

 The Tunica County Board of Supervisors will hold a public hearing on its proposed budget and proposed tax levies for the fiscal year 2014-2015 on Thursday, August 28, 2014 at 5:00 p.m. at the Tunica County Courthouse located at 1300 School Street, in Tunica.
 

 The Tunica County Board of Supervisors is now operating with projected total budget revenue of $45,368,673. Four (4) percent or $2,043,000 of such revenue is obtained through ad valorem taxes. For the next fiscal year, the proposed budget has total projected revenue of $40,000,000. Of that amount, eight (8) percent or $3,100,000 is proposed to be financed through a total ad valorem tax levy.
 

 For the next fiscal year, the Tunica County Board of Supervisors plans to increase your ad valorem tax millage rate by 5.00 mills, due to the decrease in assessed property values.
 

 Any citizen of Tunica County is invited to attend this public hearing on the proposed
 budget and tax levy, and will be allowed to speak for a reasonable amount of time and offer tangible evidence before any vote is taken.
 

 The advertised meeting occurred on August 28, 2014, and a report was introduced from Barbara Tuchel of Tunicians for Transparency in Government, who made various suggestions for budget reductions.
 

 ¶ 4. The minutes also include a document, dated August 28, 2014, and entitled "RESOLUTION OF THE BOARD OF SUPERVISORS OF TUNICA COUNTY, MISSISSIPPI AUTHORIZING AND APPROVING THE HOLDING OF A PUBLIC HEARING ... RELATING TO GIVING THE PUBLIC NOTICE OF A HEARING TO BE HELD ON THE PROPOSED BUDGET AND PROPOSED TAX LEVIES FOR TUNICA COUNTY ...." This resolution purported to fix a public hearing on August 28, "relating to the proposed budget and proposed tax levies for Tunica County, Mississippi, all relating to fiscal year 2014-2015 ...."
 
 [1]
 
 The resolution also said that "notice shall be given as required by law that the Board of Supervisors will consider and adopt a resolution adopting the final budget and tax levy resolution contemplated thereby at the Board of Supervisors' meeting to be held on Tuesday, September 2, 2014 beginning at 5:00 p.m. ...."
 
 [2]
 
 The Board then recessed the August 28 meeting and indicated in its minutes that it would continue the meeting to September 4, 2014.
 

 ¶ 5. The next meeting of the Board took place, according to the minutes, on September 2, 2014. The minutes of the September 2 meeting do not reflect that the Board took up or considered the matter of the millage rate increase. The Board then recessed the September 2 meeting and indicated in its minutes that it would continue the meeting to September 4, 2014.
 

 ¶ 6. The minutes show that the Board did meet on September 4, 2014. The only budget-related item of business considered by the Board at that time was a request from Michael Thompson, County Administrator, that a "Work Session for the 2015 Budget Year" be scheduled for September 11, 2014. The Board approved the request. The Board then recessed the September 4 meeting and indicated in its minutes that it would continue the meeting to September 11, 2014.
 

 ¶ 7. The Board next convened on September 15, 2014, according to the minutes. At its September 15 meeting, the Board approved the fiscal year 2015 budget for the county, which included an
 
 ad valorem
 
 tax levy. The "General County" millage rate increased from the 9.14 mills figure from the fiscal year 2013 levy to 15 mills, an increase of 5.86 mills. The "County Road Construction and Maintenance" millage rate was levied at 9 mills.
 
 [3]
 
 The "Yazoo-Mississippi Delta Joint Water Management District" millage rate increased from 0.71 mills in the fiscal year 2013 levy to 0.75 mills, an increase of 0.04 mills. The "G.O. Bonds Sinking Fund" levy increased from 15.77 mills in the fiscal year 2013 levy to 17 mills, an increase of 1.23 mills. The Tunica County School District "School
 Shortfall Notes" millage rate decreased from 1.32 mills in the fiscal year 2013 levy to .32 mills, a decrease of 1 mill. In total, according to the fiscal year 2015 levy order, the change in the millage rate from the fiscal year 2013 levy was 15.13 mills.
 
 [4]
 

 ¶ 8. Also at the September 15 meeting, the Board adopted a "RESOLUTION MEMORIALIZING DISCUSSION RELATING TO THE BUDGET FOR TUNICA COUNTY AND ADOPTING A BUDGET FOR THE FISCAL YEAR BEGINNING OCTOBER 1, 2014." This resolution claimed that "notice of today's budget discussion and potential action relating to the budget and the tax levy had been advertised as required by law."
 
 [5]
 
 According to the resolution, "[a] copy of the Proof of Publication relating thereto was received and directed to be attached hereto and made a part hereof as Exhibit 'A.' "
 
 [6]
 

 ¶ 9. The page immediately preceding the resolution (Book 166, Page 251) in the Board minutes (Book 166, Page 250, 414) is entitled "NOTICE OF A TAX INCREASE AND PUBLIC HEARING ON THE PROPOSED BUDGET AND PROPOSED TAX LEVIES FOR TUNICA COUNTY BOARD OF SUPERVISORS," and states the following:
 

 The Board of Supervisors of Tunica County, Mississippi will hold a public hearing on a proposed ad valorem tax revenue increase for fiscal year 2014-15 and on its proposed budget and proposed tax levies for fiscal year 2014-2015 on (September 30, 2014 at 5:00 p.m.) at the (Tunica County Courthouse located at 1300 School Street, Tunica County Mississippi).
 

 Tunica County, Mississippi is now operating with projected total budget revenue of
 

 $45,368,673
 

 in which (4.5 percent) or
 

 $2,043,000
 

 of such revenue is obtained through ad valorem taxes. For the next fiscal year, the proposed budget has total projected revenue of
 

 $35,621,996
 

 . Of that amount, Eight (8.42) percent or
 
 $3,000,000
 
 is proposed to be financed through a total ad valorem tax levy.
 

 For next fiscal year, Tunica County, Mississippi plans to increase your ad valorem tax millage rate by
 

 19.36
 

 mills from 64.72 to 84.08. This increase means that you will pay more in ad valorem taxes on your home, automobile tag, utilities, business, fixtures, and equipment and rental property.
 

 Tunica County, Mississippi proposes to increase the millage because of General Obligation Bond Debt and decreasing assessed property values and decreasing gaming tax revenue that supports and sustains the County's general operations.
 

 Any citizen of Tunica County, Mississippi is invited to attend this public hearing on the proposed ad valorem tax levy increase, and will be allowed to speak for a reasonable amount of time and offer tangible evidence before any vote is taken.
 

 (Emphasis in original.)
 
 [7]
 

 ¶ 10. The next meeting of the Board occurred on September 30, 2014. In accordance with the above notice, a public hearing took place. Various citizens, including Joe Jackson, Bobby Papasan, Brook Taylor, Barbara Tuchel, Dollie Hudson, Kathlene Gann, and Supervisor Henry Nickson, Jr., appeared before the Board to express "[b]udget [c]oncerns."
 

 ¶ 11. On October 10, 2014, Hollywood Casino-Tunica, or HWCC-Tunica, LLC (HWCC), filed a Bill of Exceptions/Notice of Appeal in the Circuit Court of Tunica County, Mississippi. HWCC argued,
 
 inter alia
 
 , that, because notice requirements of the Mississippi Code had not been complied with in levying
 
 ad valorem
 
 taxes for fiscal year 2014-15, the tax levy was "illegal and void." The Board filed its answer on November 3, 2014. Both parties filed briefs in the Circuit Court of Tunica County. A hearing on the HWCC's Bill of Exceptions was held on June 5, 2015. At the hearing, the Board moved
 
 ore tenus
 
 to dismiss, arguing that the bill of exceptions had not been timely filed and had not been signed by the president of the Tunica County Board of Supervisors and that such procedural failings deprived the circuit court of jurisdiction.
 

 ¶ 12. The trial court entered an order on October 13, 2015. It held that, because the Board failed to comply with the advertising requirements contained in Mississippi Code "Section 27-39-203(2)(a)," which it found were mandatory, "HWCC was overcharged for those ad valorem taxes it paid for the 2014-2015 fiscal year."
 
 [8]
 

 ¶ 13. Aggrieved, the Board filed a notice of appeal on October 30, 2015.
 

 DISCUSSION
 

 1. Whether the circuit court lacked jurisdiction over the tax levy appeal.
 

 ¶ 14. The Board argues that the Circuit Court of Tunica County lacked jurisdiction to hear the appeal because HWCC had failed to challenge the tax levy under Mississippi Code Section 11-51-77 (Rev. 2012) and to comply with the procedural requirements thereof, which the Board asserts constitute the exclusive method by which tax assessments may be challenged. The Board argues that HWCC's filing of a bill of exceptions pursuant to Mississippi Code Section 11-51-75 (Rev. 2012) was erroneous. The Board continues that, even if filing a bill of exceptions was proper, HWCC's failure to comply with the procedural requirements of Mississippi Code Section 11-51-75 deprived the trial court of jurisdiction.
 

 ¶ 15. Mississippi Code Section 11-51-77 provides a procedure for challenging a decision of boards of supervisors "as to the assessment of taxes":
 

 Any person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town or village, as to the assessment of taxes, may, within ten days after the adjournment of the
 meeting at which such decision is made, appeal to the circuit court of the county, upon giving bond, with sufficient sureties, in double the amount of the matter in dispute, but never less than One Hundred Dollars ($100.00), payable to the state, and conditioned to perform the judgment of the circuit court, and to be approved by the clerk of such board, who, upon the filing of such bond, shall make a true copy of any papers on file relating to such controversy, and file such copy certified by him, with said bond, in the office of the clerk of the circuit court, on or before its next term. The controversy shall be tried anew in the circuit court at the first term, and be a preference case, and, if the matter be decided against the person who appealed, judgment shall be rendered on the appeal bond for damages at the rate of ten percent (10%) on the amount in controversy and all costs. If the matter be decided in favor of the person who appealed, judgment in his favor shall be certified to the board of supervisors, or the municipal authorities, as the case may be, which shall conform thereto, and shall pay the costs. The county attorney, the district attorney, or the Attorney General, if the state, county or municipality be aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town, or village as to the assessment of taxes, may, within twenty days after the adjournment of the meeting at which such decision is made, or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state tax commission, or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state tax commission is entered, appeal to the circuit court of the county in like manner as in the case of any person aggrieved as hereinbefore provided, except no bond shall be required, and such appeal may be otherwise governed by the provisions of this section.
 

 Miss. Code Ann. § 11-51-77
 
 (Rev. 2012). Mississippi Code Section 11-51-75 provides a procedure for challenging a "judgment or decision" of a board of supervisors:
 

 Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities. Costs shall be awarded as in other cases. The board of supervisors or municipal authorities may employ counsel to defend such appeals, to be paid out of the county or municipal treasury. Any such appeal may be heard and determined in vacation in the discretion of the court on motion of either party and written notice for ten (10) days to the other party or parties or the attorney of record, and the hearing of same shall be held in the
 county where the suit is pending unless the judge in his order shall otherwise direct....
 

 Miss. Code Ann. § 11-51-75
 
 (Rev. 2012).
 

 ¶ 16. The trial court stated that, were it to determine that HWCC had filed a bill of exceptions, it "would most likely have to find it lacked jurisdiction to entertain this matter." The trial court held, however, that it was not "bound by the captions of the pleadings" and found that Section 11-51-77 governed, "[b]ecause the decision being appealed derives from a decision involving a
 
 tax matter
 
 ...." (Emphasis in original.) The trial court denied the Board's
 
 ore tenus
 
 motion to dismiss, finding that the Board was estopped from complaining that the bill of exceptions was filed untimely and that it lacked the Board president's signature in light of the Board's failure to comply with the mandatory statutory advertising requirements. The trial court found that the bond requirement of Section 11-51-77 was unnecessary because "the court understands that the tax heretofore imposed upon the plaintiff has been paid."
 

 ¶ 17. In deciding that Section 11-51-77 governed, the trial court relied on
 
 Lenoir v. Madison County
 
 ,
 
 641 So.2d 1124
 
 (Miss. 1994). In
 
 Lenoir
 
 , the plaintiff challenged the denial of an agricultural use valuation, which had been granted continually for more than forty years, and which had resulted in extensively lower
 
 ad valorem
 
 taxes on the property.
 

 Id.
 

 at 1125
 
 . The taxes, which had been only a few hundred dollars per year, increased to approximately $95,000 per year as a result of the denial of the agricultural use valuation.
 

 Id.
 

 The plaintiff sought relief from the Madison County Board of Supervisors in the form of a correction of the assessed taxes and the agricultural use valuation denial, but the Board denied her petition.
 

 Id.
 

 As a result, the plaintiff posted a bond and filed a complaint pursuant to Section 11-51-77 in the Circuit Court of Madison County.
 

 Id.
 

 ¶ 18. Madison County sought dismissal for lack of jurisdiction, arguing that a bill of exceptions was required pursuant to Section 11-51-75, and the trial court dismissed.
 

 Id.
 

 at 1126
 
 . This Court therefore was presented with the question of "whether filing a complaint with the Circuit Court of Madison County vested that court with subject matter jurisdiction over issues regarding tax assessments, or whether a bill of exceptions was required to be filed with the circuit court as a prerequisite to acquisition of subject matter jurisdiction."
 

 Id.
 

 at 1126
 
 .
 

 ¶ 19. This Court found that the absence of any statutory requirement for filing a bill of exceptions contained within Section 11-51-77 was indicative of "the legislature's
 
 intent not to require
 
 the filing of a bill of exceptions as a prerequisite to an appeal to the circuit court from an adverse decision of the board of supervisors,
 
 if
 
 a § 11-51-77 assessment of taxes is the subject of the appeal."
 

 Id.
 

 at 1129
 
 (emphasis in original). The Court reversed and remanded the judgment of the circuit court, holding that:
 

 [A]s a matter of law,
 
 Miss. Code Ann. § 11-51-77
 
 (1972), controls
 
 Miss. Code Ann. § 11-51-75
 
 (1972), and, consequently,
 
 where a tax matter is involved
 
 , the filing of a bill of exceptions is not a prerequisite to vesting the circuit court with subject matter jurisdiction over appeals to the circuit court from decisions of the board of supervisors.
 

 Id.
 

 (emphasis in original).
 

 ¶ 20. The Board argues that, because HWCC failed to post a bond in accordance with that statute, the circuit court lacked jurisdiction. HWCC responds that Section 11-51-77 governs appeals of tax assessments, not tax levies by a Board of Supervisors,
 and that this Court has reviewed bills of exceptions in cases involving other "tax matters."
 

 ¶ 21. In
 
 City of Ocean Springs v. Home Builders Association of Mississippi, Inc.
 
 ,
 
 932 So.2d 44
 
 , 47 (Miss. 2006), the Mayor and Board of Aldermen of Ocean Springs, Mississippi, adopted "a Comprehensive Plan, which included separate impact fee ordinances which authorized the assessment, collection, and expenditure of 'development impact fees' for various municipal improvements, services, equipment, and vehicles." Home Builders Association of Mississippi, Inc. (Home Builders), filed a bill of exceptions claiming that the development impact fees "constituted facial and per se illegal taxes which the City did not have the power to enact."
 

 Id.
 

 The Circuit Court of Jackson County agreed that "the impact fees were actually taxes, and the ordinances were unconstitutional,
 
 i.e.
 
 , beyond the legal authority of the City" and found that "the issue is one for the Legislature rather than the courts."
 
 Id.
 
 at 448. This Court agreed: "Because these fees constitute a tax, the municipality must have enabling legislation in order to levy and collect this tax. The municipality has been given no such authority and in imposing such fees has stepped outside of its authority."
 
 Id.
 

 ¶ 22. While the question before this Court, whether a tax levy requires an appeal pursuant to Section 11-51-77 or whether a bill of exceptions may be filed pursuant to Section 11-51-75, was not before this Court in the
 
 Home Builders
 
 case, HWCC is correct that this Court did, in that instance, consider a bill of exceptions in the context of a tax levy. The
 
 Lenoir
 
 Court merely pointed out that "
 
 where a tax matter is involved
 
 , the filing of a bill of exceptions is not a prerequisite to vesting the circuit court with subject matter jurisdiction over appeals to the circuit court from decisions of the board of supervisors."
 
 Lenoir
 
 ,
 
 641 So.2d at 1132
 
 (emphasis in original). The Court in
 
 Lenoir
 
 made clear that "the case
 
 sub judice
 
 concerns a § 11-51-77
 
 tax assessment issue
 
 ."
 

 Id.
 

 at 1131
 
 (emphasis in original).
 

 ¶ 23. The
 
 Lenoir
 
 Court further observed: "
 
 The purpose of a bill of exceptions is to bring the proceedings before the tribunal to the court to enable that court to determine whether the tribunal acted properly with reference to what was before it
 
 ."
 

 Id.
 

 at 1128
 
 (quoting
 
 McIntosh v. Amacker
 
 ,
 
 592 So.2d 525
 
 , 528 (Miss. 1991) (Banks, J., concurring in part, dissenting in part)) (emphasis in
 
 Lenoir
 
 ). "[I]n appealed tax matters, a bill of exceptions is not necessary for the circuit court since the proceedings of the board of supervisors are not in issue, only the decision of the board of supervisors is reviewed."
 
 Lenoir
 
 ,
 
 641 So.2d at 1128
 
 .
 

 ¶ 24. Here, the bill of exceptions filed by HWCC challenged the Board's compliance with the mandatory statutory notice requirements set forth in then- Mississippi Code Section 27-39-203(2) (2012). According to the bill of exceptions, "[f]ailure to comply renders the budget and tax levy illegal and void." The bill of exceptions takes issue with the procedures the Board employed in levying the tax. Therefore, the Board's proceedings are in issue and, under the language in
 
 Lenoir
 
 , require a bill of exceptions.
 
 Lenoir
 
 ,
 
 641 So.2d at 1128
 
 . The Tunica County Circuit Court was obliged to determine whether the Board had "acted properly with reference to what was before it."
 

 Id.
 

 (emphasis removed).
 

 ¶ 25. Moreover, Section 11-51-77, by its plain language, applies to "a decision of the board of supervisors ... as to the
 
 assessment
 
 of taxes ...." (Emphasis added.) Mississippi Code Section 27-39-317 (Rev. 2010) rightly contemplates that a levy and
 an assessment are different. According to Section 27-39-317 :
 

 The board of supervisors of each county shall ... levy the county ad valorem taxes for the fiscal year, and shall, by order, fix the tax rate, or levy, for the county, for the road districts, if any, and for the school districts, if any, and for any other taxing districts; and the rates, or levies, for the county and for any district shall be expressed in mills or a decimal fraction of a mill.
 

 Miss. Code Ann. § 27-39-317
 
 . "Said tax rates, or levies, shall determine the ad valorem taxes
 
 to be collected
 
 upon each dollar of valuation, upon the assessment rolls of the county ...."
 
 Miss. Code Ann. § 27-39-317
 
 (emphasis added). Thus, according to Mississippi Code Section 27-39-317, the levy is a rate by which the tax assessor ascertains the amount of
 
 ad valorem
 
 taxes to be assessed, then collected by the tax collector. The formula applies to all nonexempt landowners.
 

 ¶ 26. Before this Court for decision are both the assessment of taxes to the county's taxpayers and the levy of taxes, applicable to all of the county's nonexempt landowners. The Board
 
 levied
 
 a tax, after which HWCC filed a Bill of Exceptions in which it argued that the levy was void. HWCC, after the tax had been
 
 assessed
 
 and had been paid under protest, supplemented the Bill of Exceptions with an additional request for relief: that the taxes which it had paid under protest be refunded.
 

 ¶ 27. Because the trial court ultimately made its decision after the taxes had been assessed and paid under protest, we find no error in the trial court's treatment of HWCC's bill of exceptions as a Section 11-51-77 appeal from a tax assessment.
 

 ¶ 28. We find that the trial court should not be held in error in its determination that payment of the tax under protest was sufficient to waive the bond requirement. This Court has held that payment of an assessment pursuant to Section 11-51-77, then Section 62 of the Mississippi Code of 1930, "under protest does not prevent the appellant from prosecuting his appeal from an erroneous assessment."
 
 Grenada Bank v. Town of Moorhead
 
 ,
 
 160 Miss. 163
 
 ,
 
 133 So. 666
 
 (1931) (citing
 
 Gordon v. Gibbs
 
 ,
 
 11 Miss. 473
 
 (1844) ). Consequently, the cases cited by the Board which stand for the proposition that the trial court lacks appellate jurisdiction when an appealing taxpayer fails to post a bond pursuant to statute, are inapposite.
 
 See
 

 Miss. Dep't of Revenue v. AT & T Corp.
 
 ,
 
 101 So.3d 1139
 
 (Miss. 2012) (trial court lacked appellate jurisdiction because taxpayer paid the assessed tax under protest instead of filing suit to restrain collection of taxes and complying with statutory bond requirements);
 
 Khurana v. Miss. Dep't of Revenue
 
 ,
 
 85 So.3d 851
 
 (Miss. 2012) (trial court lacked appellate jurisdiction because taxpayer failed to comply with statutory requirements by timely posting a bond or paying taxes under protest);
 
 5K Farms, Inc. v. Miss. Dep't of Revenue
 
 ,
 
 94 So.3d 221
 
 (Miss. 2012) (in a case involving an assessment of taxes, this Court held that the statutory pretrial bond requirement "is a requirement governing appellate jurisdiction rather than a procedural requirement").
 

 ¶ 29. The Board further argues that the trial court lacked appellate jurisdiction in the present case because HWCC failed to obtain the signature of the president of the board of supervisors.
 

 ¶ 30. Section 11-51-75 requires that the bill of exceptions be "signed by the person acting as president of the board of supervisors ...." In
 
 City of Jackson v. Varia, Inc.
 
 ,
 
 241 Miss. 705
 
 ,
 
 133 So.2d 16
 
 , (1961), this Court considered a case in which Varia, Inc., had sought "to maintain a house
 trailer on the premises ... where it conducted a drive-in theater." The City Council had denied the permit and Varia filed a bill of exceptions in the Circuit Court of Hinds County.
 

 Id.
 

 The bill of exceptions "was signed by one of the attorneys for [Varia], instead of by the Mayor, and the same was not approved by the Mayor or Commissioners."
 

 Id.
 

 This Court held that Section 1195, Mississippi Code of 1942, now Section 11-51-75, had not been "complied with in any manner" and that, as a result, "the circuit court had no jurisdiction to enter any judgment except that of dismissal of the appeal."
 

 Id.
 

 at 16-17 (citing
 
 Yandell v. Madison Cty.
 
 ,
 
 79 Miss. 212
 
 ,
 
 30 So. 606
 
 (1901) ).
 

 ¶ 31. HWCC argues that
 
 Varia
 
 involved a complete failure to file a bill of exceptions because that factual scenario existed in the case upon which it relied,
 
 Yandell v. City of Madison County
 
 . In
 
 Yandell
 
 , this Court held that the circuit court lacked jurisdiction because, while the decision of the board of supervisors had been appealed, no bill of exceptions had been filed: "such appeal without bill of exceptions is irregular or void, for the circuit court would possess no means of determining whether the judgment of the board of supervisors should be affirmed or reversed ...."
 
 Yandell
 
 ,
 
 30 So. at 606-607
 
 . In
 
 Varia
 
 , in addition to the lack of the mayor's signature, the Court found that the bill of exceptions was deficient because "[n]o fact, judgment or decision was embodied in the purported bill of exceptions since there was no testimony offered by [Varia] to show that the ordinance in question was not a reasonable exercise of the police power of the municipal authorities and for the promotion of the public health and welfare."
 
 Varia
 
 , 113 So.2d at 16.
 

 ¶ 32. In
 
 Gallagher v. City of Waveland
 
 ,
 
 182 So.3d 471
 
 , 473-74 (Miss. Ct. App. 2015),
 
 cert. denied
 

 181 So.3d 1010
 
 (Jan. 21, 2016), the Mississippi Court of Appeals declined to dismiss for lack of jurisdiction a bill of exceptions that was unsigned by the mayor. The Court of Appeals referred to
 
 Wilkinson County Board of Supervisors v. Quality Farms, Inc.
 
 ,
 
 767 So.2d 1007
 
 , 1012 (Miss. 2000), in which this Court found that the circuit court should have dismissed for lack of jurisdiction because the bill of exceptions was incomplete and was "fatally defective in that pertinent and important facts are omitted therefrom," and therefore "the court does not have a record upon which it can act intelligently."
 
 Wilkinson
 
 ,
 
 767 So.2d at 1012
 
 .
 

 ¶ 33. The Court of Appeals in
 
 Gallagher
 
 noted that it had distinguished the
 
 Wilkinson
 
 case in
 
 McKee v. City of Starkville
 
 :
 

 While neither McKee nor the City complied with the procedural requirements set forth in
 
 Wilkinson
 
 , the bills of exceptions filed with the circuit court contained the "pertinent and important facts and documents" and constituted "a record upon which (the court could) intelligently act."
 
 Wilkinson
 
 ,
 
 767 So.2d at 1012
 
 (¶ 14). Furthermore, the supreme court has previously addressed the merits of an appeal where there were two bills of exceptions before the circuit court-one filed by local residents without the mayor's signature and another filed by the Board of Aldermen with the mayor's signature.
 
 See
 

 Hall v. City of Ridgeland
 
 ,
 
 37 So.3d 25
 
 , 32 (¶ 17) (Miss. 2010). Therefore, under these facts, we decline to dismiss for lack of subject matter jurisdiction.
 

 Gallagher
 
 ,
 
 182 So.3d at
 
 475 (citing
 
 McKee v. City of Starkville
 
 ,
 
 97 So.3d 97
 
 , 101 (Miss. Ct. App. 2012) ). "Thus, this Court found that when the bill of exceptions contains 'all pertinent and important facts and documents,' and constitutes a complete record on which the court could intelligently
 act, the appeal will not be dismissed for lack of subject-matter jurisdiction."
 

 Id.
 

 ¶ 34. HWCC argues that no discretion exists with regard to the signing of the bill of exceptions by a mayor or the president of a board of supervisors:
 

 The general rule with respect to bills of exceptions when presented to the proper official for signature appears to be that such officer or official cannot arbitrarily refuse to sign and return the bill of exceptions merely because he deems the same to be incorrect, but that it is his duty to point out wherein he deems the same to be incorrect, and to note his corrections thereon, and to sign the same as correct.
 

 Reed v. Adams
 
 ,
 
 236 Miss. 333
 
 ,
 
 111 So.2d 222
 
 , 224 (1959). Section 1195 of the Mississippi Code of 1942, now Mississippi Code Section 11-51-75, "made it the mandatory duty of the mayor to sign a bill of exceptions when timely presented to him."
 
 [9]
 

 Id.
 
 at 225. In the event of a refusal of the presiding officer to sign a timely presented bill of exceptions, protestants of the board's decision may petition for a writ of mandamus to compel the signature.
 
 Roach v. Tallahatchie Cty.
 
 ,
 
 78 Miss. 303
 
 ,
 
 29 So. 93
 
 (1901).
 

 ¶ 35. Here, the bill of exceptions made specific claims with regard to the actions of the board of supervisors and incorporated as an exhibit the pertinent minutes. Under law of this State, the lack of the signature of the president of a board of supervisors, standing alone, does not divest the circuit court of jurisdiction. Under the facts presented, we hold that the absence of the Board president's signature is not sufficient to defeat circuit court jurisdiction.
 

 2. Whether the circuit court erred in holding that the Board failed to comply with the mandatory advertising requirements of Mississippi Code Section 27-39-203(2).
 

 ¶ 36. Mississippi Code Section 27-39-203(1) provides: "[t]he governing body of all taxing entities shall hold a public hearing at which time the budget and tax levies for the upcoming fiscal year will be considered."
 
 Miss. Code Ann. § 27-39-203
 
 (1) (Rev. 2017). The statute in effect in 2014
 
 [10]
 
 was Mississippi Code Section 27-39-203(2) (2012), which provided the following:
 

 The public hearing shall be advertised in accordance with the following procedures. The advertisement shall be no less than one-fourth (1/4) page in size and the type used shall be no smaller than eighteen (18) point and surrounded by a one-fourth-inch solid black border. The advertisement may not be placed in that portion of the newspaper where legal notices and classified advertisements appear. It is the intent of the Legislature that the advertisement appears in a newspaper that is published at least five (5) days a week, unless the only newspaper in the county is published less than five (5) days a week. It is further the intent of the Legislature that the newspaper selected be one of general interest and readership in the community, and not one of limited subject matter.
 

 The advertisement shall be run once each week for the two (2) weeks preceding the adoption of the final budget. The advertisement shall state that the taxing entity will meet on a certain day, time and place fixed in the advertisement, which shall be not less than seven (7) days after the day the first advertisement is published, for the purpose of hearing comments regarding the proposed budget and proposed tax levies. Any increase in the projected budget revenues or any increase in the millage rate over the current fiscal year shall be explained by the governing body giving the reasons for the proposed increase. A taxing entity collecting taxes in more than one (1) county shall make the required advertisement by publication in each county where the taxing entity collects taxes.
 

 Miss. Code Ann. § 27-39-203
 
 (2) (2012). The trial court held that, because the Board failed to comply with the statutory advertising requirements, which it found were mandatory, "HWCC was overcharged for those ad valorem taxes it paid for the 2014-2015 fiscal year." The trial court noted that "[i]t appears that the first time the public was made aware that the Board had adopted the 2014-2015 budget with its tax increases was when such was announced at the September 30, 2014, meeting."
 

 ¶ 37. On appeal, the Board argues that, because "taxpayers had received actual notice, the intent of the notice statute was satisfied." (citing
 
 Austin
 
 , Opinion No. 97-022,
 
 1997 WL 47285
 
 (Miss. A.G. January 24, 1997).
 
 [11]
 
 That Attorney General's opinion noted that "[t]he law required that notice of the intent to hold the referendum election, and the particulars of that election be conveyed to the citizenry by way of publication for at least three consecutive weeks in a local newspaper."
 

 Id.
 

 According to the opinion, "[t]hat was accomplished by the numerous news articles published in the local newspaper" and "more people probably had notice of the election through the news articles than would have had through a legal notice."
 

 Id.
 

 The Attorney General opined that "any defect in the form of the notice would not invalidate the referendum election and the results thereof."
 

 Id.
 

 ¶ 38. The Attorney General's opinion cited a decision of this Court:
 

 [I]f a statute does not expressly declare that a particular act is essential to the election's validity or that omission of the particular act will render the election void, the statute is considered directory rather than mandatory, so long as the irregular act is not intended to affect the integrity of the election ....
 

 Rogers v. Holder
 
 ,
 
 636 So.2d 645
 
 , 647-48 (Miss. 1994) (citing
 
 Riley v. Clayton
 
 ,
 
 441 So.2d 1322
 
 , 1326 (Miss. 1983) ). It is clear that this principle governs in the context of an election contest: "[i]f the violated statute is directory rather than mandatory and there is no allegation or proof of fraud, the non-complying ballots are valid and properly counted."
 

 Id.
 

 The Board argues that the principle is the same in the context of a tax levy and that the notice requirements in Mississippi Code Section 27-39-203 are directory and not mandatory.
 

 ¶ 39. The Board continues that, under Mississippi Code Section 27-39-203(9), "the remedy is not to void the levy but to require the proper notice to be given, with an opportunity to be heard, before the funds are spent."
 

 Mississippi Code Section 27-39-203(9) states that "[a]ny governing body of a tax entity shall be prohibited from expending any funds for the applicable fiscal year until it has strictly complied with the advertisement and public hearing requirements set forth in this section."
 
 Miss. Code Ann. § 27-39-203
 
 (9) (Rev. 2017). The Board argues that because the statute does not specifically state that tax levies would be void for failure to follow statutory notice requirements, the requirements are "directory" rather than "mandatory" and that, instead of voiding the tax increases altogether, the trial court should "only have prevented the county from expending funds from the increases until the notice advertisement was corrected and a hearing held based on the statute."
 

 ¶ 40. HWCC responds that "[t]he power to levy and collect taxes is conferred by statute, and when so conferred, can be exercised only in the manner pointed out by the statute."
 
 Chickasaw Cty. v. Gulf, Mobile & Ohio R. Co.
 
 ,
 
 195 Miss. 754
 
 ,
 
 15 So.2d 348
 
 , 351 (1943) (citing
 
 Miss. R.R. Comm'n v. Western Union Tel. Co.
 
 ,
 
 107 Miss. 442
 
 ,
 
 65 So. 505
 
 (1914) ("[T]he power to assess property for taxation and to levy and collect taxes is conferred, not by the common law, but by statute, and when so conferred can be exercised only in the manner pointed out by the statute ....")
 

 ¶ 41. HWCC cites
 
 Gulf & Ship Island Railroad Company v. Harrison County
 
 ,
 
 192 Miss. 114
 
 ,
 
 4 So.2d 717
 
 (1941), in which this Court considered the effect of failure to comply with statutory requirements for a tax levy. This Court held that "[t]he wisdom of the statute is not for us to decide. We have only the duty to construe it as written. The requirements of the statute are mandatory and the order in this case does not comply with them, and the levy is not legal."
 
 [12]
 

 Id.
 
 at 718. And HWCC also cites
 
 Burke v. Leggett
 
 , in which this Court considered the following statute:
 

 The board of supervisors of any county may levy a special tax for the erection, remodeling, enlarging, or repairing of the courthouse, jail, or other county buildings, and the orders making such special levy shall designate the objects for which the levy is made, and the fund shall be applied to no other purpose.
 

 Burke v. Leggett
 
 ,
 
 118 Miss. 660
 
 ,
 
 79 So. 843
 
 , 844 (1918) (quoting Miss. Code 1906, § 324). This Court held that "[t]he statute, section 324, Code of 1906, is mandatory and not directory" and that "[t]he power to make the levy is given by this statute, which provides clearly that the purpose of the levy shall be designated."
 

 Id.
 

 This Court stated that the levy at issue was "unquestionably void because the order of the board failed to designate the objects for which the levy was made."
 

 Id.
 

 ¶ 42. HWCC further cites the Due Process Clause of the Mississippi Constitution: "No person shall be deprived of life, liberty or property except by due process of law." Miss. Const. art. 3, § 14.
 
 See
 

 Miss. Power Co. v. Miss. Pub. Serv. Comm'n
 
 ,
 
 168 So.3d 905
 
 , 916 (Miss. 2015) (order granting rate increases reversed and refund ordered to taxpayers because "the Commission failed to fulfill its duties and obligations pursuant to statutory directives and our existing law ... the overwhelming majority of 186,000 ratepayers was not accorded due process of law from the beginning.")
 

 ¶ 43. The Attorney General's opinion and the cases upon which the Board relies are exclusively election contest cases and they are inapplicable here. The remedy of Mississippi Code Section 27-39-203(9) requires strict compliance with advertisement
 and public hearing requirements. It is true that Section 27-39-203(9) prohibits expenditure of funds until strict compliance has been observed, but Section 27-39-203(2) sets forth specific requirements for advertisement of public hearings prior to the adoption of the final budget, and, in the event of a millage increase, an explanation is required.
 

 ¶ 44. In the present case, the August 22, 2014, Tunica
 
 Times
 
 advertisement announced a public hearing on the tax levies that was to take place on August 28, 2014. A board of supervisors meeting did take place on August 28, 2014, but no hearing on the proposed tax levies occurred. On September 15, 2014, no hearing having taken place, the Board ordered the tax levies and increased the millage rates. On September 19, 2014, a public hearing on "proposed ad valorem tax revenue increase for fiscal year 2014-15" was advertised in the Tunica
 
 Times
 
 and was to take place on September 30, 2014.
 
 [13]
 
 Such hearing did occur on September 30, 2014, and taxpayers attended to voice concerns.
 

 ¶ 45. Statutory requirements relating to the levy of taxes have been ruled by this Court to be mandatory, not directory, and this Court has determined those noncompliant tax levies to have been void.
 
 Gulf & Ship Island RR Co.
 
 ,
 
 4 So.2d at
 
 718 ;
 
 Burke
 
 ,
 
 79 So. at 844
 
 .
 

 ¶ 46. The Board did not comply with the notice and hearing requirements of Section 27-39-203(2) prior to the September 15, 2014, tax millage increase. Only
 
 after
 
 the Board had increased the millage rate, was Section 27-39-203(2) -in part-complied with, because a hearing was advertised to take place on September 30, 2014. However, publication occurred but once, on September 19, 2014.
 
 [14]
 
 Instead of voiding the tax levy altogether, were this Court to require proper notice and a hearing, the statutory strict compliance requirement would be thwarted. The record reflects that the Board already has conducted such hearing on September 30, 2014, which was followed by the present bill of exceptions. Any attempt at this late time to remediate the Board's omissions and salvage its failed tax levy would be highly impractical and would require the judicial crafting of procedures not contemplated by established law. This Court declines to engage in such an enterprise.
 

 ¶ 47. The trial court noted the Board's differentiation of general tax levies and tax levies for road and construction: "[t]he county's argument is that because the road and bridge construction tax levies in Tunica County had been eliminated for over ten (10) years prior, the levying of such taxes in the 2014-2015 budget should be viewed as 'new' taxes, rather than an increase in taxes." The County changed the millage rate for "County Road Construction and Maintenance" from 0 mills to 9 mills.
 

 ¶ 48. The Board argues on appeal that "the County Road Construction and Maintenance levy is better characterized as a new levy that does not require notice."
 
 [15]
 

 For that proposition, the Board cites an opinion in which the Mississippi Attorney General considered whether a new town was exempt from the notice and public hearing requirements of Section 27-39-203 when the new town was attempting to "levy[ ] a municipal general ad valorem tax for the first time[.]"
 
 Meyer
 
 , Opinion No. 98-0341,
 
 1998 WL 382974
 
 (Miss. A.G. June 19, 1998). The Attorney General cited Section 21-33-45 (Supp. 1997),
 
 [16]
 
 which provided that "[i]f the rates of levies for the municipality or taxing district are an increase from the previous fiscal year, then the proposed rate or levy increase shall be advertised in accordance with Secs. 27-39-203...." The Attorney General opined that "advertising of the initial tax levy of a municipality is not required pursuant to Section 27-39-203 since that section contemplates a tax increase, rather than a first tax levy."
 
 Meyer
 
 , Opinion No. 97-341,
 
 1998 WL 382974
 
 (Miss. A.G. June 19, 1998).
 

 ¶ 49. In that case, the trial court noted that Section 27-39-203(1) had changed. In 1998, it stated "[n]o taxing entity may budget an increased amount of ad valorem tax revenue ... unless it advertises its intention to do so ...."
 
 Miss. Code Ann. § 27-39-203
 
 (1) (1995). In 1999, the statute changed as follows: "All taxing entities ... shall hold a public hearing at which the budget for the following fiscal year will be considered, regardless of whether that budget will be increased or decreased from the current budget ...."
 
 Miss. Code Ann. § 27-39-203
 
 (1) (1999). The statute changed in 2012 to its present wording, which did not include reference to an increase/new levy distinction: "The governing body of all taxing entities shall hold a public hearing at which time the budget and tax levies for the upcoming fiscal year will be considered."
 
 Miss. Code Ann. § 27-39-203
 
 (1) (Rev. 2017).
 

 ¶ 50. Furthermore, Section 21-33-45 (Rev. 2015) applies to "[t]he governing authorities of each municipality." If "the rates or levies for the municipality ... are an increase from the previous fiscal year," then Section 27-39-203 applies. Section 27-39-203 applies to "[t]he governing body of all taxing entities."
 

 ¶ 51. More fundamentally, no evidence is found in the record to the effect that the increase of 0 mills to 9 mills for "County Road Construction and Maintenance" was a new levy or one that the Board revived for fiscal year 2014-15. Indeed, the Attorney General opinion cited by the Board applies to a new municipality's levying taxes for the first time. No such scenario exists in the present case.
 

 CONCLUSION
 

 ¶ 52. We hold that the Circuit Court of Tunica County had jurisdiction to entertain the appeal pursuant to Mississippi Code Section 11-51-77 or pursuant to Mississippi Code Section 11-51-75. We hold also that the Tunica County Board of Supervisors altogether failed to comply with the notice and public hearing requirements of Section 27-38-203. Accordingly, we affirm the judgment of the Circuit Court of Tunica County.
 

 ¶ 53.
 
 AFFIRMED.
 

 WALLER, C.J., RANDOLPH, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., AND MAXWELL, J. CHAMBERLIN, J., JOINS IN PART.
 

 From this it appears that the Board resolved to set up a public hearing which was to take place on the same day the hearing was already set to take occur, according to the notice which had been published six days before, on August 22, 2014.
 

 The record does not reflect that notice ever was published in a newspaper regarding the Board's September 2, 2014, meeting. The only notice relating to the August 28 hearing was published on August 22, 2014.
 

 No millage rate was set for county road construction and maintenance in the fiscal year 2013 levy.
 

 HWCC-Tunica, LLC, indicates in its brief that the "Board met and increased the millage rate by 16.09 mills," but that figure does not take into account the increase in the "Yazoo-Mississippi Delta Joint Water Management District" millage rate, nor does it take into account the "School Shortfall Notes" millage rate decrease.
 

 Apart from the notice of hearing published in the Tunica
 
 Times
 
 on August 22, 2014, no other such notice published before September 15, 2014, appears in the record before this Court.
 

 No such proof of publication appears in the Board's minutes.
 
 See infra
 
 , fn. 7.
 

 A proof of publication appears in the record demonstrating that something was published in the Tunica
 
 Times
 
 on September 19, 2014. But the September 19 proof of publication does not appear to have been entered on the minutes of the Board.
 

 On February 13, 2015, HWCC had filed a Supplement to Bill of Exception/Notice of Appeal, attached to which was a receipt from the Tunica County Tax Collector showing that the assessed taxes had been paid as of January 26, 2015. Accordingly, HWCC, in addition to repeating its request that the trial court find the tax levy illegal and void, asked that the trial court "instruct the tax collector of Tunica County, Mississippi, to refund the increased ad valorem taxes paid by it subject to this appeal."
 

 Nothing in the record indicates that the bill of exceptions was timely presented to the president of the Board of Supervisors by HWCC. No indication appears in the record with regard to why the president did not sign HWCC's bill of exceptions.
 

 Mississippi Code Section 27-39-203(2)(a) appears only in the statutory revisions which became effective on July 1, 2015, the statute's current form.
 
 Miss. Code Ann. § 27-39-203
 
 (2)(a) (Rev. 2017). The trial court applied the 2015 revision, which was not in effect at the time the Board acted.
 

 "Though attorney general opinions are not binding, they may be considered by this Court ...."
 
 McAdams v. Perkins
 
 ,
 
 204 So.3d 1257
 
 , 1262 (Miss. 2016) (citing
 
 City of Durant v. Laws Constr. Co.,
 

 721 So.2d 598
 
 , 604 (Miss. 1998) ).
 

 The statute at issue in
 
 Gulf & Ship Island Railroad
 
 was Section 3227, Mississippi Code of 1930, which now appears as Mississippi Code Section § 27-39-317 (Rev. 2010).
 

 Again, the September 19, 2014, publication is referenced in the Board's response to HWCC's brief in the trial court. The proof of publication was attached as an exhibit but does not appear to have been entered on the Board's minutes.
 
 See supra
 
 fn. 7.
 

 See supra
 
 fn. 7.
 

 The Board continues to argue that "[u]nder Mississippi law, the courts cannot interfere with the discretion of the county board of supervisors to expend tax funds for the construction and repair of roads and highways." While that may be true, at issue here is not the propriety of the
 
 expenditure
 
 of the tax revenue designated for road and construction, but rather the
 
 levy
 
 of taxes for that purpose. The statute requires notice and a public hearing for all tax levies and makes no distinction based on the purpose for which the taxes are levied.
 
 See
 

 Miss. Code Ann. § 27-39-203
 
 (2) (2012).
 

 Currently, this section appears as Mississippi Code Section 21-33-45 (Rev. 2015).